**In The Matter of: Alphonse FORBECK, Respondent.**

**No. ED 93195.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

May 18, 2010.

and L.K.J., but the rights of those individuals are not the subject of this appeal.

Edwin D. Akers, Kathie B. Dudley, David S. Purcell, Paul M. Ganter, John M. Challis, Robert J. Selsor, St. Louis, MO, for appellants.

Malaine P. Hagemeier, Troy, MO, for respondents.

GARY M. GAERTNER, JR., J.

*Introduction*

Joann Mulkey (Mulkey), David S. Purcell (Purcell), Purcell & Amen, L.L.C. (Purcell & Amen), and Alphonse Forbeck appeal from the judgment entered by the probate division of the circuit court (probate court) approving the dismissal by James L. Forbeck and Joseph A. Schneider (Petitioners) of their "Petition for Appointment of Guardian and Conservator for Forbeck" (Petition). We dismiss the appeal.

*Procedural and Factual Background*

Petitioners filed their Petition on or about February 26, 2009, alleging that they were nephews of Alphonse Forbeck (Forbeck), a ninety-year-old man who had never married, had no children, but had three surviving siblings. The Petition alleged that Forbeck, a resident at Elsberry Healthcare Center, owned real property worth more than $1,000,000.00, and personal property with a value also exceeding $1,000,000.00. Petitioners alleged that they sought appointment of a guardian for Forbeck because he was nearly blind; suffered from cancer; and was unable to manage his legal or financial affairs due to his advanced age. Petitioners further alleged that the Department of Health and Senior Services (DHSS) was investigating a complaint involving suspected abuse and financial wrong-doings by Mulkey, who had been Forbeck's health care assistant. Petitioners requested that they be issued Letters of Co–Guardianship and Co–Conservatorship.

In support of their Petition, Petitioners attached, and incorporated by reference, their own affidavit and the affidavit of Linda M. Haake (Haake), Administrator of Elsberry Health Care Center. In their affidavit, Petitioners reiterated their allegation concerning the DHSS investigation of Mulkey, and additionally stated that Mulkey unduly influenced Forbeck, and alienated him from his family to such an extent that his health and financial well-being were at risk.

In her affidavit, Haake stated that Forbeck had been a resident of Elsberry Health Care Center since December 3, 2008, and had confided to Haake on several occasions during his residency at the nursing facility. Haake attested that, during the week of February 26, 2009, Forbeck told Haake he was going to see his attorney. When Haake asked him why he was going to see an attorney, Forbeck said that he did not know, but that Mulkey told him he had to go. Haake further attested that Mulkey, against doctors' orders, advised Forbeck not to take his medication.

Haake attested that, although Forbeck was excited about going to a family party, he confided to Haake that Mulkey would not allow him to attend it, and that Mulkey told Forbeck that if he went to the party, Mulkey would never see him again and would never do anything for him again. Haake stated that she and her staff once saw Mulkey take Forbeck outside of the health care facility, grab him by both sides of his jacket, and pull him close to her in an aggressive manner. Haake opined that Mulkey exerted undue influence on Forbeck and that Forbeck feared Mulkey.

Thereafter, the probate court entered an order appointing attorney Chris Mennemeyer (Mennemeyer) to represent Forbeck and setting the matter for hearing at 4:30 p.m. on February 26, 2009. Forbeck was served with notice of the hearing that day at 12:50 p.m. Petitioners and Mennemeyer appeared at the hearing for emergency appointment of Conservator ad Litem and Guardian ad Litem. During this hearing, Petitioners and Mennemeyer stipulated to the admission of Petitioners' and Haake's affidavits.

As Forbeck's guardian ad litem (GAL), Mennemeyer testified that she had visited Forbeck at the nursing home and that she had also met with Haake. During Mennemeyer's visit, Forbeck told her that he realized that he could not live independently at home, and said that he was happy living at the nursing home. Mennemeyer testified that Forbeck related the names of his family members and indicated to her that he was on good terms with all of them, including Petitioners. Forbeck told Mennemeyer that it did not matter to him who took care of his affairs and finances, and that Mulkey had told him she would do it. However, Mennemeyer stated that when she would bring Mulkey's name into a discussion, Forbeck "seemed to really shift mannerism and seemed nervous [.]"

Mennemeyer testified that Forbeck had difficulty seeing and that Mennemeyer believed he had signed multiple documents without knowing what he was signing. Mennemeyer further testified that Mulkey, a healthcare worker unrelated to Forbeck, transferred large assets belonging to Forbeck into Mulkey's name. Mennemeyer opined that she believed it would be prudent for Forbeck's family to step in and care for him and to obtain an accounting of his assets. She further opined:

> [T]here would be no harm if the Court entered the order temporarily because he's in a good place. There's not a financial issue where he's going to be kicked out. He doesn't have anything that needs to be managed between now and when you can have a hearing that would be detrimental if the Court issues the order.
>
> If the Court doesn't issue this order, I think he's at grave risk for the person that the allegations are against will continue to take immediate action and further deplete his assets and things of that nature. Kind of perpetuate the cycle, if you will, that's going on. So I would recommend that the Court entertain what has been asked for by the petitioners to protect the respondent.

Although Mennemeyer indicated that she did not see a medical emergency for the order, Petitioners argued that, as stated in Haake's affidavit, Mulkey unduly influenced Forbeck, and had told him not to take his prescribed medication. Petitioners further argued Mulkey had told Forbeck that she would remove him from the nursing facility due to the DHSS investigation. Mennemeyer confirmed that Haake had confided to her that during Haake's twelve-year tenure at the nursing facility, she had never been as concerned about an individual being unduly influenced as she was about Forbeck. Mennemeyer testified

that Haake was not the first person to whom Forbeck had confided at the nursing home; he had previously confided to two nurses, reporting similar instances that suggested Mulkey was exerting undue influence on Forbeck.

At the close of the hearing, the probate court entered a temporary order, appointing Mennemeyer as Forbeck's temporary emergency guardian, appointing Petitioners temporary emergency co-guardians and temporary emergency co-conservators, issuing Temporary Letters of Emergency Guardianship and Conservatorship to Petitioners, and setting the matter for hearing on March 25, 2009. The probate court concluded:

> This Court, based upon the petition for appointment, based upon the affidavit by both petitioners Forbeck and Schneider, as well as Linda M. Haake, and not in small part upon the testimony of Ms. Mennemeyer, finds that it is necessary to appoint a co—a temporary emergency co-guardian and co-conservator at this time for Forbeck's benefit.

> The Court has clear concerns as to whether or not this gentlemen is incapacitated, which by law is required for a finding here. And I'm telling you that right now. There are other avenues available for what is being sought here, tort actions and other actions. However, based upon the petition presented and the evidence here today I am making this finding.

On February 27, 2009, counsel for Mulkey entered her appearance in the matter. The probate court entered an order continuing the appointment of Mennemeyer as Forbeck's attorney on March 2. The hearing on the Petition was rescheduled for March 19.

On March 3, David Purcell (Purcell) of Purcell & Amen entered his appearance on behalf of Forbeck. Thereafter, Purcell filed a motion to vacate the emergency guardianship and conservatorship order, alleging that the court's temporary order did not afford Forbeck reasonable notice or any other elements of procedural due process. This motion alleged that the temporary order did not comply procedurally with Chapter 475 RSMo,[1] and that the order was entered without competent or clear and convincing evidence in support of the Petition's allegations. Among other things, the motion alleged that Petitioners and Elsberry Health Care Center had ignored or circumvented Forbeck's health care advance directive and health care power of attorney, and had denied him the benefit of contact with his own chosen care provider, Mulkey.

The motion filed by Purcell further alleged "Forbeck has made previous adequate provisions for management of his financial affairs through creation of an intervivos trust and durable powers of attorney and is receiving adequate assistance with those affairs through Joann Mulkey and David S. Purcell, attorney at law and the Purcell & Amen LLC law firm [.]" The motion stated that, because Forbeck did not own any personal or real property, a conservatorship was inappropriate. The motion additionally stated, "Forbeck *is not mentally incapacitated* and if he were, by virtue of his durable power of attorney, and trust, neither a guardianship nor conservatorship would be necessary and even if a guardianship or conservatorship were appropriate, he has exercised his rights under Section 475.050 to choose his own fiduciary." (emphasis added).

On March 5, Mulkey filed a "Motion to Dismiss Petitions for Guardianship and Conservatorship or, in the Alternative, to

1. All statutory citations are to RSMo 2004, unless otherwise indicated.

Appoint Attorney in Fact." In her motion to dismiss, Mulkey alleged that she was Forbeck's duly appointed attorney-in-fact for healthcare and financial matters. Mulkey asserted that no guardian or conservator was needed because Forbeck was able to receive, evaluate and communicate decisions, and if he needed assistance, he had a duly-appointed attorney-in-fact for health care and financial matters. Mulkey asserted that the Petition should be dismissed for failure to allege any specific physical or mental condition as a basis for the finding of incapacity or disability. Mulkey contended that the court's temporary order should be vacated due to Petitioner's failure to inform the court that durable powers of attorney existed, and averred that the order undermined the authority of Mulkey as attorney-in-fact without notice and due process.

Alternatively, Mulkey asserted that, should the probate court determine after a full hearing that Forbeck was in need of a guardian or conservator, the court was required, except for good cause shown, to appoint Mulkey because she was the attorney-in-fact named in a durable power of attorney within five years of the hearing. Mulkey submitted excerpts from a Durable Health Care Power of Attorney and a copy of a General Durable Power of Attorney, prepared by Purcell and naming Mulkey as attorney-in-fact for Forbeck. Upon review of the Petition and the filed motions, the probate court ordered that the rules of civil procedure would apply to the cause and its proceedings.

Subsequently, Purcell and Mulkey filed various motions opposing the Petition. As well, counsel representing Purcell & Amen in the law firm's capacity as fiduciary to Forbeck (Special Co-Trustee of the Forbeck Living Trust) entered its appearance, and filed a "Motion Incorporating and Joining in Certain Motions Filed by Respondent."

On March 23, Mennemeyer filed a motion to strike all filings by Purcell & Amen and Purcell. Thereafter, Purcell & Amen filed notices to take Forbeck's deposition; in response, Mennemeyer filed a motion to quash, and a motion for protective order. Petitioners filed a motion for leave to file a First Amended Petition and Amended Witness List on March 25.

At an April 3 hearing regarding various motions filed by the parties, the trial court also received evidence concerning Forbeck's wish to be represented by private counsel and his capacity to make such a choice. Mennemeyer, as GAL, presented the testimony of Forbeck. Forbeck testified that he understood that he was present in court concerning a possible guardianship being established for him. Forbeck stated that he did not contact Purcell to represent him in the guardianship matter, nor did he direct anyone else to contact Purcell on his behalf. Although he was aware that Purcell was present and wanted to represent him in the matter, Forbeck testified that he did not want Purcell's representation and did not want him as his attorney.

Forbeck was aware that the court had appointed Mennemeyer to represent him and he had met with her several times concerning the proceedings. Mennemeyer brought him documents she had enlarged so that he could read them for himself. He and Mennemeyer also drafted documents together. When Purcell entered his appearance in the matter on Forbeck's behalf, Mennemeyer showed Forbeck the documents that Purcell had filed. At that time, Forbeck told Mennemeyer that he did not want Purcell to be his attorney. Contrary to Purcell's claim that he had been Forbeck's attorney for years, the only legal services for which Forbeck had

employed Purcell involved preparation of estate-planning documents with Mulkey; Forbeck had never needed an attorney for anything else.

Forbeck testified that Mulkey drove him to Purcell's office in St. Louis County on several occasions to have Purcell draft a trust for him. Forbeck recalled that the documents established Mulkey as his co-trustee of his trust. Forbeck testified that, although he signed the trust documents, he did not know what he was signing at the time. Forbeck testified that he only signed the documents because he thought that any decisions would have to be made jointly by him and Mulkey, but that was not the way matters had been handled. He further testified that he did not want Mulkey to be involved in his affairs.

Although Forbeck was not aware Petitioners were going to file their Petition and had not talked to Petitioners about the matter before he was served with the papers, he had planned to have them act as his guardians and conservators.

During his cross-examination by Petitioners, Forbeck testified that he did not call Purcell to ask him to come to Elsberry Health Care Center, and did not know Purcell was coming there to visit him until he arrived. He testified that he did not ask anyone to contact Purcell on his behalf, and did not authorize Mulkey to pay $12,500.00 of his money to Purcell for representation in this matter. Forbeck testified he was confident that Mennemeyer was representing his interests in the proceeding, and he believed Purcell was acting against his interests. He testified that he had not signed any documents for Purcell in the proceeding, and he asked the probate court to not allow Purcell to continue to represent him.

Petitioners called Purcell to testify. Purcell recalled that he had a conversation with Forbeck at Elsberry Health Care Center five weeks prior to that day's hearing, after Mulkey told Purcell that Forbeck was not going to be able to come to Purcell's office for an appointment Mulkey had scheduled for that Friday morning. At some point during this visit, Purcell learned of the court proceedings.[2] Purcell immediately went to the courthouse to view the probate court file in this matter. Purcell never contacted Mennemeyer personally after he learned she had been appointed to represent Forbeck; Purcell first saw her at a court hearing. Purcell admitted that Forbeck did not contact him to represent him in this proceeding, and that he heard Forbeck state in court that he did not want Purcell to represent him.

During cross-examination, Purcell testified that, between his initial 2005 contact and the filing of the guardianship proceeding in February of 2009, he had met with Forbeck approximately six times and had spoken with him by phone approximately six times. After speaking with Forbeck at the nursing facility, Purcell had the "impression" that Forbeck wanted Purcell to represent him in the "general context" of resisting efforts to take away his rights and control of his property.

Forbeck testified on redirect following Purcell's testimony, and stated that he did not personally contact Purcell to ask him to come to the nursing facility, he had never asked him to represent him in the guardianship/conservatorship proceeding, and he had not asked him to act as his attorney "whenever things happened." He

2. Interestingly, Purcell brought a gerontologist social worker with him to the nursing home when he visited Forbeck.

reiterated that he did not want Purcell as his attorney.

Mulkey testified on her own behalf. When Mulkey discovered DHSS was conducting an investigation of her handling of Forbeck's affairs, she went to the nursing facility to talk to Forbeck. When Mulkey called Purcell on the Friday morning before he came to the Elsberry Health Care Center, she told Purcell that she could not see Forbeck anymore. Further, Mulkey said she could not bring him to his appointment with Purcell, because the nursing facility had received an order from the probate court stating that Mulkey was not allowed to have contact with Forbeck.

At the conclusion of the hearing, Mennemeyer and Petitioners argued that Purcell & Amen, as special co-trustee, was not a proper party to the guardianship/conservatorship proceeding. Purcell asked the probate court to "consider whether there should be a guardianship and conservatorship at all." The court continued the temporary emergency letters issued to Petitioners, pending a full hearing.

On April 7, the probate court entered a Judgment and Order, first noting that Petitioners' motion for leave to file their First Amended Petition and Amended Witness List was consented to by the parties. Among other things, the court denied the motions to strike Purcell's and Purcell & Amen's filings. Thereafter, Purcell & Amen filed an Answer and Affirmative Defenses to Petitioners' First Amended Petition. Mulkey also filed an Answer and Affirmative Defenses.

On April 20, Petitioners and Forbeck filed a Notice of Dismissal. The Memorandum of Dismissal indicated that Petitioners, Forbeck, Forbeck as Grantor and Trustee of the Forbeck Revocable Living Trust, and Mennemeyer were jointly filing a stipulation of dismissal, with court costs assessed to Petitioner and a guardian-ad-litem fee awarded to Mennemeyer. The Memorandum of Dismissal indicated that all assets acquired by the ad litem conservators were to be returned to Forbeck. Forbeck, individually and in his capacity as Grantor and Trustee, waived accounting, inventory, appraisement, or turn-over settlement by the ad litem conservators. This Memorandum of Dismissal was signed by Petitioners and their counsel; Forbeck, individually and as Grantor and Trustee; and Mennemeyer. As well, the Memorandum of Dismissal was signed by Judge Burkemper, following the notation "SO ORDERED," and dated April 20, 2009.[3] The probate court forwarded copies of the Order of Dismissal to all parties.

On April 28, Mulkey filed a "First Amended Request for Instructions and to Declare Rights." Mulkey filed an "Application for Attorneys' Fees" on April 30. Purcell & Amen filed its "Special Co–Trustee's Request for Instructions and Application for Compensation, Fees, and Costs" on April 29. Mulkey filed a "Supplement to First Amended Request for Instructions and to Declare Rights" on May 13.

A hearing was conducted on May 18, following which all motions were taken under advisement.[4] On May 19, Purcell &

---

**3.** The probate court's approval of the voluntary dismissal of the Petition was necessary. *State ex rel. Standefer v. England*, 328 S.W.2d 732, 738 (Mo.App.1959) (interest of public is such that petition in guardianship proceedings cannot by dismissed by petitioner except by consent of probate court acting in its dis-

cretion for best interests of public and individual whose competency is questioned).

**4.** During this hearing, Purcell testified that he had put in an additional twenty-four hours of time, at $300 per hour, after Forbeck testified on April 3 that he did not want Purcell's services. In a discussion concerning fees and costs that Purcell was asking to be awarded,

Amen filed a "Special Co–Trustee's Motion to Amend the Judgment, For a New Trial, and/or To Set Aside the Judgment," with a supporting memorandum and exhibits. That same date, Mulkey filed her "Motion to Amend or Set Aside the Order or Judgment of the Court Entered on April 20, 2009 Dismissing Petitioners' Cause of Action and for a New Trial." Both parties' after-trial motions argued that the probate court should have dismissed the Petition and the Amended Petition for failure to meet statutory requirements. Mennemeyer filed a "Memorandum in Opposition to Court Action Following Voluntary Dismissal." Purcell & Amen and Mulkey filed responses to Mennemeyer's memorandum.

On June 16, 2009, the probate court entered a Judgment and Order, denying all of Mulkey's and Purcell & Amen's after-trial motions. In this Judgment and Order, the probate court notified the parties that it had modified the "Memorandum of Dismissal" entered by the court on April 20, 2009 by designating it a "Judgment" for appeal purposes. Mulkey filed her Notice of Appeal on June 25, 2009. On June 29, Purcell filed a Notice of Appeal on behalf of Forbeck, Purcell individually, and Purcell & Amen as Special Co–Trustee. These appeals were consolidated.

## Discussion

On January 6, 2010, other counsel for Forbeck entered an appearance before this Court. On February 16, 2010, counsel filed a "Motion to Dismiss Appeals of Alphonse Forbeck, Purcell & Amen and Joann Mulkey" (Motion to Dismiss Appeals). In this motion, Forbeck submitted an affidavit dated February 3, 2010, in which he attested, among other things, that he did not ask or authorize Purcell or Mulkey to file any appeals concerning the probate matter. He also stated, "I want both appeals to be dismissed." Forbeck also submitted the affidavit, dated February 5, 2010, of his treating physician who attested that Forbeck was competent to handle his own affairs and that Forbeck demonstrated no mental incapacity or disability during the time period since this physician began seeing him in December 2008.

Purcell, who claimed to be representing Forbeck, did not file a response to the motion or challenge any of the facts in the affidavits, other than to assert in his reply brief that the Court should not consider the affidavits because they were neither part of, nor introduced with, the record at the trial in this matter.

Rule 84.09 [5] allows an appellant to file a dismissal of his appeal with this Court at any time prior to the submission of the cause. We believe the affidavit filed by Forbeck was sufficient to constitute a voluntary dismissal of his appeal. Even if Purcell had been authorized to file an appeal on Forbeck's behalf, Forbeck still retains the right to voluntarily dismiss his appeal. *See State ex rel. McMullin v. Satz*, 759 S.W.2d 839, 840 (Mo. banc 1988). Accordingly, Forbeck's appeal is dismissed.[6]

Purcell indicated the social worker who accompanied Purcell to the nursing home during his visit with Forbeck had opined that Forbeck had the mental competence of a seven-year-old. However, there was no testimony from the gerontologist; moreover, neither an affidavit nor a report was offered or submitted.

5. All rule citations are to Mo. R. Civ. P. (2010), unless otherwise indicated.

6. We acknowledge generally, that an appellate court will not consider affidavits or evidence that was not before the trial court. *Sleater v. Sleater*, 42 S.W.3d 821, 822 n. 1 (Mo.App. E.D.2001). However, we are not using the affidavits to consider the merits of

Petitioners and Forbeck further argue that we are without jurisdiction to consider the appeal, because the dismissal of a petition for guardianship/conservatorship by the petitioners, with consent of the respondent and the probate court, is not appealable. They also assert that the Notices of Appeal were untimely filed, and that Mulkey, Purcell, and Purcell & Amen lack standing to appeal.

In her suggestions in opposition to the Motion to Dismiss Appeals, Mulkey contends that the April 20 order was much more than a simple dismissal, because accounting, inventory, appraisement, or a turn-over settlement was waived and the GAL was awarded fees. She argues that Rule 67.01 (allowing a plaintiff to dismiss an action without order of the court at anytime prior to the introduction of evidence at the trial of the matter) is inapplicable to the April 20 order, because the order was more than a simple dismissal; because the order concerned a petition in guardianship proceedings and required court approval before dismissal; and because evidence was submitted in the February 26 emergency hearing and at the April 3 motion hearing. Mulkey also asserts that the April 20 order was not a final judgment because it did not dispose of all claims and issues in the case.

Mulkey further avers, however, that her Notice of Appeal was timely filed because, as her after-trial motions were authorized by Rule 81.05, the probate court retained jurisdiction over the matter until it issued the June 16, 2009 Judgment, disposing of the remaining issues and denominating the April 20 Order a "Judgment." Mulkey argues that she has standing to appeal the

judgment because she had been named attorney-in-fact in a Durable Power of Attorney executed within five years of the filing of the Petition, and because she was a fiduciary pursuant to Section 475.075.2.

In their Reply Brief, Purcell, and Purcell & Amen join in Mulkey's suggestions in opposition. Purcell, and Purcell & Amen contend they have standing to appeal the April 20 dismissal because they were proper parties to the initial proceeding—Purcell as Forbeck's private attorney, and Purcell & Amen as Special Co–Trustee of Forbeck's Trust—and because they fit Section 475.010's definition of interested persons, in that they had a "claim against the estate of a [ward]."

We find, however, that Rule 67.02(b), providing for the voluntary dismissal of an action at the plaintiff's instance "upon order of the court upon such terms and conditions as the court deems proper [,]" is applicable here and requires us to dismiss the appeals for lack of an appealable judgment. As an initial matter, we find it ironic—and quite revealing— that Mulkey, Purcell, and Purcell & Amen are now appealing the approved voluntary dismissal of the very same Petition they urged the probate court to dismiss while they were purporting to act in Forbeck's best interests. Moreover, these very same parties continued to argue in their after-trial motions that the probate court should have dismissed the Petition and Amended Petition for failure to meet statutory requirements. However, even were we to assume, for the sake of argument, that Rule 67.02(b) [7] does not apply to voluntary dismissals of guardianship/conservatorship

the appeal, but rather to determine whether Forbeck's voluntary dismissal of his appeal filed during the appeal is effective. A voluntary dismissal of the appeal necessarily occurs after the judgment has been entered and an

appeal has been filed. The motion to strike the affidavits is denied.

7. Rule 67.02, outlining the effect of voluntary dismissals, provides in pertinent part:

petitions with court approval, our review of the record reveals several grounds requiring us to dismiss these two consolidated appeals.

■ The right to appeal from a probate court's judgment is purely statutory. *Estate of Juppier*, 81 S.W.3d 699, 700 (Mo. App. E.D.2002). Sections 472.160 and 472.170 address appeals from the probate division. *Matter of Couch v. Couch*, 824 S.W.2d 65, 70 (Mo.App. W.D.1991). Section 472.170 allows appeals from the probate division in any case in which a final adjudication in an investigation of the mental condition of any person alleged to be disabled, incapacitated, or mentally ill has been made. Clearly, as no final adjudication as to Forbeck's mental condition was made by the probate court, Section 472.170 would not be applicable here.

On appeal, Mulkey, Purcell, and Purcell & Amen vigorously argue that Forbeck was declared "incapacitated and disabled" on February 26, 2009. We disagree; the probate court's actions on that date were merely to appoint counsel for Forbeck as statutorily required, to determine whether Forbeck was capable of understanding the proceeding and contributing to the protection of his own interests, and to take immediate action to protect the personal welfare and property of Forbeck. *Matter of Jessee*, 744 S.W.2d 514, 516 (Mo.App.1988); Section 475.075.11. The finding required to appoint a guardian ad litem or conservator ad litem as the probate court did on February 26 is *the existence of an emergency presenting a substantial risk* that serious physical harm will occur to an alleged incapacitated or disabled person or *that irreparable damage will occur to the individual's property* because of that person's failure or inability to provide for his human needs or to protect his property. Section 475.075.11. There was no formal or final adjudication of Forbeck's incapacity, partial incapacity, disability, or partial disability, and indeed, such an adjudication could not have been made at the emergency stage under Section 475.075.11 during the February 26 court proceeding without violating the rights afforded Forbeck in Section 475.075.8. *Matter of Jessee*, 744 S.W.2d at 516 (among other rights, alleged incapacitated or disabled person has right to hearing conducted in accordance with civil rules of evidence, right to present evidence and to cross-examine adverse witnesses, and right to be present at the hearing); *see also Matter of Myhre*, 772 S.W.2d 415, 416 (Mo.App. W.D.1989) (petitioners have burden to prove incapacity by clear and convincing evidence). Section 475.075.11 contemplates a situation following the filing of a petition, where counsel for the alleged incapacitated or disabled person has been appointed but a hearing on the ultimate question of incapacity has not yet been conducted. *See Matter of Jessee*, 744 S.W.2d at 516; John A. Borron, Jr., Probate Law & Practice, 3d. ed. (5C Mo. Prac. Sect.1936–1939, 1979 pp. 428–40, 518) (2000).

Section 472.160 specifically enumerates thirteen types of cases from which an aggrieved interested party may appeal, and additionally provides for appeals in all oth-

(a) Except as provided in Rule 52, a civil action may be dismissed by the plaintiff without order of the court anytime:

\*  \*  \*

(2) In cases tried without a jury, prior to the introduction of evidence at the trial.

\*  \*  \*

(b) Except as provided in Rule 67.02(a), an action shall not be dismissed at the plaintiff's

instance except upon order of the court upon such terms and conditions as the court deems proper. . . .

er cases "where there is a final order or judgment of the probate division of the circuit court under this code except orders admitting to or rejecting wills from probate." [8] Our review of this section fails to reveal a provision under which an appeal of the probate court's dismissal could be taken.

In most instances, when a cause is dismissed without prejudice, a party may file another action in the same court; thus, such a dismissal is not a final judgment for the purpose of appeal. *Estate of Johnson*, 912 S.W.2d 560, 561 (Mo.App. E.D.1995); *Matter of Myhre*, 772 S.W.2d at 416 (when question of whether evidence presented in support of petition for declaration of incapacity and for appointment of guardian is sufficient to make fact issue of alleged incapacity is not adjudicated before dismissal, petition may be refiled and cause retried upon same or new evidence with no effect on result because of prior dismissal); Rule 67.01. The dismissal here does not purport to be an adjudication of any procedural or substantive aspects of Forbeck's condition, and does not foreclose the filing of another petition if Forbeck's situation warrants it in the future. *Matter of Myhre*, 772 S.W.2d at 416.

Moreover, again assuming only for the sake of argument, that the after-trial motions filed with the probate court were authorized and acted to extend the time for filing notices of appeal,[9] the June 16 Judgment denying Mulkey's, Purcell's and Purcell & Amen's requests and motions obviously did not affect the rights of all parties: among other things, the significant issue of Forbeck's alleged incapacity was never adjudicated. Because the probate court's dismissal does not finally dispose of the case, it is therefore unappealable. *Id.* Accordingly, for all of the reasons discussed, we lack authority to address the merits of the action and must dismiss the appeal. *Id.*

■ Even if we had authority to address the merit s, however, we would still dismiss the appeal, because neither Mulkey, Purcell, nor Purcell & Amen have standing to appeal the probate court's dismissal, as they are not aggrieved interested parties. Section 472.160.1. As noted, Mulkey asserts that she has standing to appeal the dismissal "due to her status as a named attorney-in-fact in a Durable Power of Attorney executed within five years of the proceeding and because she

---

8. Section 472.160.1 provides:

Any interested person aggrieved thereby may appeal to the appropriate appellate court from the order, judgment or decree of the probate division in any of the following cases:

(1) On the allowance of any claim against an estate exceeding one hundred dollars;

(2) On all settlements of the personal representative;

(3) On all apportionments among creditors, legatees or distributes;

(4) On all orders directing the payment of legacies, making distribution or making allowances to the surviving spouse or unmarried minor children;

(5) On all orders for the sale of assets of the probate estate;

(6) On all orders for the sale of real estate;

(7) On judgments for waste;

(8) On proceedings to recover balances escheated to the state;

(9) On all orders revoking letters testamentary or of administration;

(10) On orders making allowances for the expenses of administration;

(11) On orders for the specific execution of contracts;

(12) On orders compelling legatees and distributees to refund;

(13) On all orders denying any of the foregoing requested actions;

(14) In all other cases where there is a final order or judgment of the probate division of the circuit court under this code except orders admitting to or rejecting wills from probate.

9. See Rules 74, 75, and 78.

was a fiduciary pursuant to Section 475.075.2." [10] Purcell, and Purcell & Amen claim they have standing because they were proper parties to the initial proceeding and they fit Section 472.010's definition of interested persons, in that they have a "claim against the estate of a [ward]."

Section 472.010(15) defines "interested persons" to mean: "heirs, devisees, spouses, creditors or any others having a property right or claim against the estate of a decedent being administered and includes children of a protectee who may have a property right or claim against or an interest in the estate of a protectee." Mulkey, Purcell, and Purcell & Amen are not heirs, devisees, or spouses of Forbeck, nor do any of these parties have a vested financial interest in Forbeck's estate; therefore, they would not have standing to appeal, even if the dismissal were a final appealable order. *Matter of Walker*, 875 S.W.2d 147, 150–51 (Mo.App. E.D.1994). If a party does not have standing, the appeal must be dismissed. *Estate of Juppier*, 81 S.W.3d at 701.

Although Mulkey's assertion of standing by virtue of her attorney-in-fact and fiduciary status might facially appear to have some merit, we note that, prior to the dismissal, Forbeck not only verbally repudiated his nomination of Mulkey under oath, but also revoked the Durable Power of Attorney and removed Mulkey as Co–Trustee in a document. Nevertheless, given that Mulkey would be bringing the appeal as attorney-in-fact for Forbeck, his motion to dismiss would still be dispositive.

We dismiss the appeals for the reasons discussed.[11]

### Conclusion

The consolidated appeals herein are dismissed.

ROY L. RICHTER, P.J., and MARY K. HOFF, J. concur.

---

10. Section 475.075.2 provides: "The respondent shall be served in person with the following: A copy of the petition; a written notice stating the time and place the proceeding will be heard by the court, the name and address of appointed counsel, and the names and addresses of the witnesses who may be called to testify in support of the petition; and with a copy of the respondent's rights as set forth in subsections 7 and 8 of this section. The notice shall be signed by the judge or clerk of the court and served in person on the respondent a reasonable time before the date set for the hearing. The petition shall state the names and addresses of the spouse, parents, children who have reached eighteen, any person serving as his guardian, conservator, limited guardian or limited conservator, any person having power to act in a fiduciary capacity with respect to any of the respondent's financial resources, and any person having his care and custody known to the petitioner. Each person so listed shall be served with like notice in any manner permitted by section 472.100, RSMo. If no such spouse, parent or child is known, notice shall be given to at least one of his closest relatives who have reached eighteen."

11. Purcell and Purcell & Amen's April 28, 2010 motion for attorney's fees in the amount of $115,190.00 is denied.