In the Matter of William
R. KNICHEL.

No. ED 95909.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 16, 2011.

Paul M. Gantner, St. Louis, MO, for appellant.

Monnye R. Gross, Clayton, MO, Richard A. Wier, St. Louis, MO, for respondent.

*OPINION*

CLIFFORD H. AHRENS, Presiding Judge.

Charles Amen and his law firm, Purcell & Amen, appeal the judgment of the probate division of the circuit court resolving a dispute over the trust assets of decedent William Knichel between Knichel's companion, Anita Madsen, and his children, Meghan and Joshua Knichel. Amen asserts that there is insufficient evidence in the record to find that he breached his fiduciary duty to the children, and that the trial court abused its discretion by striking a trust provision granting him broad powers of administration. We dismiss the appeal for lack of standing.

## Background

William Knichel was diagnosed with brain cancer in 2001. In 2002, he executed a durable power of attorney naming his children as his attorneys-in-fact and a will granting them equal shares in his estate. This estate included Knichel's house, bank accounts, Sherwin–Williams employee stock and pension plans, Minnesota Life insurance policy, MetLife annuity, National City IRA, and UBS IRA.

Also in 2002, Knichel's companion of 20 years, Anita Madsen, began living with and caring for Knichel in his home. In 2003, Knichel changed the primary beneficiary on his Minnesota Life insurance policy from his children to Madsen, with the children as contingent beneficiaries. Knichel also executed a new deed to his home, creating a joint tenancy between himself and Madsen, and added Madsen as a joint tenant on his National City checking account.

Knichel's health began to fail in the summer of 2004. On August 13, Knichel and Madsen visited Amen's law office where Knichel executed a trust, will, and durable power of attorney that superseded the aforementioned 2002 documents. The new documents, which Amen drafted, gave Madsen power of attorney, with the children named as successors, and established a trust for Knichel's retirement assets naming Madsen and each of the children as equal one-third beneficiaries. Madsen was designated as trustee, and Amen's law firm was designated as "special co-trustee" with the power to manage trust assets and act as arbiter of disputes between trustees and beneficiaries. This special co-trustee status was intended to confer the similar rights and duties as those exercised by a standard trustee while vesting additional powers. Specifically, the special co-trustee could issue binding proclamations regarding trust distributions between beneficiaries, arbitrate disputes between beneficiaries or between beneficiaries and trustees, and act as court gatekeeper by granting or refusing permission to bring legal action by beneficiaries or trustees.

On August 20, Madsen, with Amen's assistance, designated the trust as primary beneficiary of Knichel's MetLife Investors annuity and National City IRA. Madsen also attempted to transfer the UBS IRA to the trust, but UBS denied this request, leaving the children as primary beneficiaries of this asset (worth over $42,000). A week later, Knichel and Madsen executed documents designating the trust as beneficiary of his Sherwin–Williams employee stock purchase savings plan and his pension investment plan.

William Knichel died in October 2004. In the months that followed, Madsen and Amen continued to lobby UBS to transfer Knichel's IRA into the trust and meanwhile withheld trust distributions to the children. The children requested an accounting of the trust in December 2005 and again in March 2006. Amen provided an accounting that was incomplete in various respects and that erroneously included the UBS IRA as a trust asset. In May, the children responded with another demand for a complete and accurate accounting. In June, UBS distributed the IRA proceeds directly to the children. On July 27, Madsen distributed the equivalent of one-third of the value of the UBS IRA to herself out of trust assets. The following day, Amen, via Madsen, sent the children another accounting that still included the UBS IRA as a trust asset and also itemized the disbursement of $6,000 in trustee fees for Madsen plus $2,400 in attorney fees to Amen. Along with this accounting was submitted a distribution plan proposing to distribute the trust assets provided that the children allocate the UBS funds to the trust and sign a waiver of claims. The children refused this proposal and asserted

a fourth demand for an accounting in August 2006.

By June 2007, the children still had not received an accurate accounting or any trust distributions. Dissatisfied with Madsen's and Amen's performance as trustee and special co-trustee, respectively, including the fees that Madsen paid to herself and to Amen, the children filed suit against both parties alleging that Madsen breached her powers of attorney and fiduciary duties, unduly influenced Knichel's asset allocation, and unjustly enriched herself at the expense of the children. As pertinent here, Count VII sought removal of Amen's firm as special co-trustee and as counsel to Madsen in any capacity due to compounded conflicts of interest.

Madsen and Amen responded with a motion to dismiss for failure to state a claim upon which relief could be granted, defending their performance as statutorily and contractually adequate. During a hearing on that motion, the court questioned Amen about his potential conflict of interest in providing legal advice to Madsen while also purporting to serve as special co-trustee of the trust for all beneficiaries. Amen replied that he was representing Madsen individually and as trustee, and that the children had never formally invoked his authority or services as special co-trustee. The court denied the motion on all counts and set another hearing solely to explore further Amen's potential conflict of interest. Amen subsequently withdrew as counsel for Madsen, so the hearing was canceled.

In early October 2008, while the litigation was pending, Madsen disbursed one-third of the trust's Sherwin–Williams stock to herself. In December, the children filed a motion to freeze the trust assets. The trial court granted the motion and froze the trust, suspended both Madsen as trustee and Amen as special co-trustee, and appointed attorney John Bild, as trustee *ad litem.*

The case proceeded to trial in 2010, and the court found that Madsen had violated her fiduciary duties as Knichel's attorney-in-fact and as trustee. The court removed Madsen as trustee and ordered her to forfeit her trustee fees and reimburse the trust for attorney fees and for the UBS IRA distribution to herself. Further, the court found that Amen as special co-trustee owed the children the same fiduciary duty as did Madsen. Therefore, once Amen began to provide legal advice and service to Madsen as trustee, he was no longer a neutral, disinterested party, and thus he breached his fiduciary duty to remain impartial to all beneficiaries. The court permanently removed Amen's firm as special co-trustee and amended the trust to eliminate the paragraph creating that position.[1]

Amen now challenges the trial court judgment, asserting that there is insufficient evidence in the record to find that he breached his fiduciary duty to the children, and that the trial court abused its discretion by eliminating the special co-trustee provision from the trust document. Neither Madsen nor the children challenge the trial court's judgment, and the children have filed a motion to dismiss the appeal on the basis that Amen lacks standing for want of a justiciable grievance. Amen counters that his removal as special co-trustee as well as the potential revocation of his professional licenses[2] are harms that constitute a grievance ripe for appeal.

---

1. In January 2009, Madsen and Amen attempted to name UBS as third-party defendants for refusing to transfer the UBS IRA into the trust. In April 2009, the trial court rejected their petition and dismissed UBS from the suit.

2. Amen is also a registered financial advisor and insurance agent. Both licenses require

## Discussion

■ Initially, we must address the threshold question of whether Amen has standing to appeal the trial court's judgment. This is not the first time that the law firm of Purcell & Amen has attempted to reinstate itself as special co-trustee—against the wishes of beneficiaries—on appeal before this court. In *In re Forbeck,* we explained that the firm's designation as special co-trustee was not a vested financial interest in the estate of the client whom Mr. Purcell purported to represent; therefore, neither Purcell nor his firm had standing to appeal. 310 S.W.3d 740, 750–51 (Mo.App. E.D.2010). That case, however, involved a guardianship, so our analysis of appellate standing was governed by section 472.160,[3] which creates a right of appeal of judgments entered under the probate code (chapters 472 through 475). Trusts, however, are governed by chapter 456, the Missouri Uniform Trust Code (MUTC), which does not address appellate standing, so any right of appeal must lie in the general appeals statute, section 512.020. Nonetheless, we find guidance by analogy in *Forbeck* and other Missouri precedent involving probate matters, cited *infra.*

■ Section 512.020 grants a right of appeal to "any party to a suit aggrieved by any judgment of any trial court in any civil cause." "A party is 'aggrieved' when the judgment operates prejudicially and directly on his personal or property rights or interest." *Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon,* 231 S.W.3d 158, 168 (Mo.App. W.D.2007). Amen claims that he is aggrieved by the loss of his co-trustee appointment and corresponding fees and by the potential harm to his professional rep-

him to disclose violations of fiduciary duties.

utation. Amen also relies on section 456.1–103 of the MUTC, which includes fiduciaries in its definition of "interested persons." Specifically, it reads:

"Interested persons" include beneficiaries and any others having a property right in or claim against a trust estate which may be affected by a judicial proceeding. It also includes fiduciaries and other persons representing interested persons. The meaning as it relates to particular persons may vary from time to time and must be determined according to the particular purposes of, and matter involved in, any proceeding.

In the entirety of the MUTC, the term "interested person" as defined above is used once in reference to evidence of a person's death and twice in reference to invocation of the jurisdiction of the probate division. The second sentence of the definition clearly enables a fiduciary or personal representative to participate in litigation on behalf of trust beneficiaries. Thus, a fiduciary would have standing under section 512.020 to appeal on behalf of a beneficiary aggrieved by the lower court's judgment. It does not follow, however, that the foregoing statutes grant a fiduciary standing to advance his personal interests unrelated to those of his protectees. Here, none of the beneficiaries of Knichel's trust challenge the probate court's judgment. Amen is not representing their interests; he does not seek a property right in or claim against the trust on their behalf. Rather, the substance of Amen's challenge here advances his own interests, namely in his status and fees as special co-trustee and in his professional accreditation.

Regarding Amen's status and fees as special co-trustee, we find guidance in

3. All statutory references are to RSMo Cum. Supp.2006.

*Freeman v. De Hart,* 303 S.W.2d 217 (Mo. App. E.D.1957). In that probate matter examining standing under the general appeal statute, this court explained:

> [A]n executor or administrator has no direct pecuniary interest in the subject matter of a will contest such as to make him an aggrieved party within the meaning of section 512.020. . . . The only benefit accruing to him from a successful contest . . . would be the right to serve as executor . . . and to receive such commissions as might be allowed to him. This right is not a beneficial interest in the estate . . . but compensation allowed by law. . . . The power of appointment . . . is not a property right or a pecuniary interest in the estate, but a personal privilege or duty imposed upon the donee of such power.

*Id.* at 221–222. The logic of *Freeman* applies equally to the role of a trustee. Amen's appointment as special co-trustee was not his personal right but rather a legal duty, of which the probate court discharged him. Amen's right to collect fees was not a beneficial interest in the underlying trust but merely compensation allowed by law. *Id. See also Forbeck,* 310 S.W.3d at 751 (fees owed to special co-trustee do not constitute vested financial interest in protectee's estate). Neither the appointment nor the corresponding fees equate to a pecuniary interest in Knichel's trust assets.

Regarding Amen's professional accreditation, he laments that his removal as special co-trustee for breaching his fiduciary duties to the children must be reported to professional licensing organizations and insurance carriers, which might jeopardize his licensure, his ability to maintain insurance, and his reputation. Amen insists that this potential harm renders him an "aggrieved party," but he cites no authority for his proposition that possible, collat-

eral consequences of a fiduciary breach— as a service provider with no stake in the underlying trust corpus—vest him with standing to appeal from the trial court's judgment. On the contrary, "[a] party is 'aggrieved' when the judgment operates prejudicially and directly on his personal or property rights or interest and such is an immediate and not merely a possible remote consequence." *Weldon,* 231 S.W.3d at 168. *See also Stockman v. Safe–Skin Corp.,* 36 S.W.3d 447, 449 (Mo. App.2001) (threat of legal malpractice claim against lawyer-defendant insufficient to confer standing).

■ Finally, Amen relies on the third sentence of the MUTC's "interested person" definition prescribing a case-by-case analysis and on case law encouraging a liberal interpretation of section 512.020. *See Bydalek v. Brines,* 29 S.W.3d 848, 852 (Mo.App.2000) (Whether or not a party is aggrieved depends upon the circumstances of the particular situation. Where doubt exists as to the right of appeal, it should be resolved in favor of that right.) But these directives do not favor Amen here. To find a basis for Amen's standing on these particular facts would require more than a liberal interpretation but rather a complete disregard for existing law. To be an aggrieved party, an appellant must possess a pecuniary interest adversely affected by the probate court's final judgment. *See State ex rel. Goodloe v. Wurdeman,* 286 Mo. 153, 227 S.W. 64, 67 (1910); *Love v. White,* 348 Mo. 640, 154 S.W.2d 759, 760– 61 (1941); *Matter of Walker,* 875 S.W.2d 147, 149 (Mo.App. E.D.1994). Amen's appointment, fees, and professional future are wholly unrelated to the pecuniary interests of Knichel's beneficiaries as resolved by the probate division. Neither section 512.020 nor section 456.1–103 recognizes Amen's self-interested grievances as a legal basis for standing to appeal. In

short, Amen is not an aggrieved party under Missouri law. "A party who has not been aggrieved by a judgment has no standing to appeal." *Weldon.* If a party does not have standing, then the appeal must be dismissed. *In re Estate of Juppier,* 81 S.W.3d 699, 702 (Mo.App. E.D.2002).

### Conclusion

Respondent's motion to dismiss the appeal is granted.

ROY L. RICHTER and GARY M. GAERTNER, JR., JJ., concur.