

# In the Missouri Court of Appeals
## Eastern District

DIVISION ONE

| | | |
|---|---|---|
| KELLY J. BLANCHETTE, | ) | No. ED102153 |
| | ) | |
| Appellant, | ) | |
| | ) | Appeal from the Circuit Court |
| vs. | ) | of St. Louis County |
| | ) | |
| | ) | |
| STEVEN M. BLANCHETTE, | ) | Honorable John N. Borbonus III |
| | ) | |
| Respondent. | ) | FILED:  June 2, 2015 |

**OPINION**

Kelly Blanchette appeals from the trial court's judgment in favor of her former spouse, Steven Blanchette. The court registered the couple's foreign judgment of dissolution and two subsequent custody modifications, all issued in West Virginia, and dismissed Kelly's motion to modify custody for lack of jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Kelly presents an issue of first impression in Missouri: whether the home-state basis for jurisdiction under the UCCJEA controls as to children born after the commencement of an initial custody proceeding. We conclude that it does not and would affirm the trial court's judgment. However, given the general interest and importance of the question, we transfer the case to the Supreme Court of Missouri pursuant to Rule 83.02.

**Background**

The parties were residents of West Virginia when they had a son in November 2003 and married in March 2004. Steven filed a petition for dissolution in Berkeley County, West Virginia, in February 2005. Shortly thereafter, and with the court's consent, Kelly, then pregnant, and Son moved to Missouri, and the couple's daughter was born in St. Louis in July 2005.

In January 2006, the parties appeared before the Berkeley County Family Court in person and by counsel and presented their settlement agreement, and related testimony as to all issues, for the court's approval. As relevant here, the court found that jurisdiction and venue were proper, as both parties resided in West Virginia for more than a year preceding the filing of the petition, and that there were two children born of the marriage. There is no evidence in the record to suggest that either party or the court considered or contacted St. Louis County as an alternative or preferable forum. The Berkeley County court entered judgment of dissolution, awarded Kelly "primary" physical custody of the children, and ordered Steven to pay child support of $1,500. In 2008, Steven filed a motion to modify seeking additional custodial time. At a hearing on that motion, Kelly appeared by telephone and by counsel, and the court granted Steven's motion.

In July 2013, after a custodial visit in West Virginia, Steven sent the children (then 8 and 9) back to Missouri *via* commercial airliner unaccompanied, over Kelly's vehement protest. On September 6, 2013, Kelly filed in St. Louis County a petition to register the West Virginia dissolution judgment and first modification combined with a motion to modify the existing parenting plan to require Steven to accompany the children on air travel for visitations. Around the same time, Steven filed in Berkeley County

2

another motion to modify, seeking to increase his custodial time from one week to six weeks in the summer. Kelly received notice of a hearing on that motion eight days beforehand. She could not secure local counsel to represent her at the hearing, did not request a continuance, and did not appear at the hearing in any manner. In October 2013, the Berkeley County court granted Steven's motion, awarded him six consecutive custodial weeks in the summer, and specified that Kelly could either allow the children to fly unaccompanied or pay half the cost of the accompanying parent's airfare. The order also reduced Steven's child support obligation to $947 to reflect the shift in custodial time.

Kelly asked the St. Louis County court not to register this latest West Virginia modification but to grant her proposed modification instead. Steven responded with a motion to dismiss for lack of jurisdiction under the UCCJEA. After extensive briefing and argument, the trial court issued its judgment registering all three West Virginia judgments (*i.e.*, the original dissolution decree and two subsequent modifications) and dismissing Kelly's competing motion to modify for lack of jurisdiction in that West Virginia retained exclusive continuing jurisdiction.

Kelly appeals and asserts that the trial court erred by: (1) registering the foreign judgments as to Daughter because she has always resided in Missouri, so West Virginia lacked subject matter jurisdiction as to her custody, and (2) giving full faith and credit to the second modification because Kelly didn't receive adequate notice of the hearing.

**Standard of Review**

We affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the

3

law.  Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); Coughlin v. Coughlin, 823 S.W.2d 73, 75 (Mo. App. E.D. 1991).  A circuit court's decision whether to register a foreign judgment is a legal conclusion, so this court's review is *de novo*.  Peoples Bank v. Frazee, 318 S.W.3d 121, 127 (Mo. 2010).  Whether Missouri has jurisdiction to determine custody under the UCCJEA is also a legal question that we review *de novo*.  Al-Hawarey v. Al-Hawarey, 388 S.W.3d 237, 241 (Mo. App. E.D. 2012).

## Analysis

### Kelly's Standing to Appeal

As a preliminary matter, Steven urges this court to dismiss Kelly's appeal on the theory that Kelly is not an "aggrieved" party under §512.020 (governing who may appeal and what may be appealed) because the trial court *granted* the relief she sought in her petition, namely registration of the West Virginia judgments.  "A party cannot be aggrieved when the court has granted all of the relief sought."  Klagge v. Hyundai Motor Am., 148 S.W.3d 857, 859 (Mo. App. E.D. 2004).  Kelly responds that the trial court did not grant all the relief she sought; rather, she is aggrieved by the trial court's registration of the second modification, which she did not request and the validity of which she challenges, and by its dismissal of her motion to modify.  "A party is aggrieved when the judgment operates prejudicially and directly on her rights or interests as an immediate (rather than possible or remote) consequence.  In re Knichel, 347 S.W.3d 127, 130 (Mo. App. E.D. 2011).  Insofar as the trial court did not grant all the relief sought, and as Kelly's custodial rights are immediately and directly affected by the registration of custody orders that she challenges as void, Kelly is sufficiently aggrieved to bring this appeal.  Steven's motion to dismiss is therefore denied.

4

*West Virginia's Jurisdiction as to Daughter*

For her first point, Kelly contends that the Berkeley County court lacked subject matter jurisdiction as to Daughter because Missouri is Daughter's home state, so the West Virginia custody orders were void as to her. Typically, collateral attacks on final judgments are impermissible, but this rule does not apply where the original judgment was void. Nestle v. Johns, 452 S.W.3d 753, 757 (Mo. App. E.D. 2015). "A judgment is void if the issuing court does not have subject matter jurisdiction, personal jurisdiction, or jurisdiction to render a particular judgment in a particular case." Id. Subject matter jurisdiction cannot be waived or conferred by consent of the parties. Hightower v. Myers, 304 S.W.3d 727, 733 (Mo. 2010). It can be raised at any time by any party or court, even in a collateral or subsequent proceeding. Id. Consequently, despite Kelly's participation in the dissolution and first modification proceedings in Berkeley County, we must review the merits of her challenge to them now.[1]

In both West Virginia and Missouri, child custody jurisdiction (or authority) is governed by the UCCJEA. As relevant to the Berkeley County court's jurisdiction in the underlying case, West Virginia Code §48-20-201 provides as follows.

> (a) Except as otherwise provided in section 20-204 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:
>
> > (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the

---

[1] Steven correctly notes that, in light of J.C.W. ex rel Webb v. Wyciskalla, 275 S.W. 3d 249 (Mo. 2009), Missouri courts interpret the UCCJEA jurisdictional provisions to dictate whether a Missouri court has the *authority* to grant relief in a particular matter. Hightower, 304 S.W.3d at 733. Thus, if Kelly were challenging the subject matter jurisdiction of a Missouri court in this case, her challenge would fail. See Hightower, 304 S.W.3d at 733-734. In West Virginia, however, no such distinction exists, and the UCCJEA is interpreted to confer actual jurisdiction. See In re K.R., S.E. 2d 882 (W.Va. 2012).

proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 [inconvenient forum] or 20-208 [jurisdiction declined by reason of conduct], and:

> (a) The child and the child's parents, or the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence; and

> (b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;

(3) All courts having jurisdiction under subdivisions (1) and (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No state would have jurisdiction under subdivision (1), (2) or (3) of this subsection.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

W.Va. Code §48-20-201.[2] A child's home state is defined as follows.

> "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months *immediately before the commencement of a child custody proceeding*. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

W.Va. Code §48-20-102(g). (emphasis added)

---

[2] Missouri's version of this section of the UCCJEA, codified in §452.775 RSMo, is substantively identical.

6

Kelly argues that the Berkeley County court lacked jurisdiction to determine custody of Daughter because Daughter's home state is Missouri. But jurisdiction under the UCCJEA attaches when a custody proceeding commences, *i.e.*, when the first pleading is filed. W.Va. Code §48-20-102(e). See also <u>In re. K.R.</u>, 735 S.E.2d 882, 893 (W.Va. 2012) (recognizing that jurisdiction under the UCCJEA is determined at the time of the commencement of a child custody proceeding). In this case, the first pleading was filed when Steven submitted his dissolution petition to the Berkeley County court in February 2005. Clearly, the court acquired jurisdiction to determine custody of Son at that time. Though neither party suggests that the UCCJEA confers jurisdiction over fetuses (and courts in sister states have held that it does not (see *e.g.*, <u>Arkansas Dept. of Human Services v. Cox</u>, 349 Ark. 205, 214 (Ark. 2002)), logically any dissolution action involving minor children must necessarily determine custody of *all* children of the marriage, including those born after the initial filing.[3] Respecting this imperative, even accepting that the present proceedings didn't "commence" as to Daughter until her birth five months after that initial filing, we nonetheless cannot construe the home state provisions of the UCCJEA to prescribe the impractical result of bifurcation or transfer of the case midway through litigation.[4] The UCCJEA is intended to *avoid* jurisdictional competition and conflict. <u>Al-Hawarey v. Al-Hawarey</u>, 388 S.W.3d 237, 245 (Mo. App. E.D. 2012). (emphasis added) Consistent with this intent, our statutory construction

---

[3]In West Virginia, see <u>Mitchell v. Mitchell</u>, where the appellate court instructed the trial court on remand to determine custody and support of a child with whom mother was pregnant during the pendency of the dissolution and when judgment was entered. 205 W.Va. 203, 211 at FN 8, 517 S.E. 2d 300, 308 at FN 8 (W.Va. 1999). Similarly, in Missouri, a petition must name each child of the marriage and must state whether the wife is then pregnant (§452.310.2), and the resultant decree must resolve the issue of custody in order to be deemed a final judgment (<u>In re Marriage of Coulter</u>, 759 S.W.2d 642,645 (Mo. App. E.D.).

[4] Such a result also offends the "one family, one court" rationale behind the unified family court system adopted in both West Virginia and Missouri. W.Va. §51-2A; §487.010 RSMo.

should be reasonable and logical and should avoid unreasonable or absurd results. Cooling v. State Department of Social Services, Family Support Division, 446 S.W.3d 283, 288 (Mo. App. E.D. 2014). The rational alternative, then, is that the home-state basis for jurisdiction under the UCCJEA is simply inapplicable to Daughter given the chronology of this case, and we must examine the other possibilities.

The second and third bases for UCCJEA jurisdiction both require that Missouri have declined jurisdiction on the ground that West Virginia was the more appropriate forum.[5] Here, Missouri never declined jurisdiction (or, rather, never ceded its *authority* to hear the case), as Kelly never asked either court to consider the matter (until 2013) or to confer with the other as contemplated under the UCCJEA's cooperation provisions. §452.730 and §452.735 RSMo; W.Va. §48-20-110. Even if Kelly had raised the issue immediately after Daughter's birth, the St. Louis County court would have properly declined jurisdiction in that the parties' dissolution was already pending in West Virginia. §452.765 RSMo; Mitchell, 517 S.E. 2d at 308 FN 8. Under either scenario, the second and third options fail to confer Missouri's authority or defeat West Virginia's jurisdiction over the initial custody determination as to Daughter within the parties' pending dissolution proceedings in Berkeley County. Thus, by process of elimination, Daughter necessarily falls into the fourth category: no other state satisfied the criteria for jurisdiction under the preceding alternatives.

Under a reasonable and logical construction of the UCCJEA as applied to these particular facts, the Berkeley County court of West Virginia had subject matter jurisdiction to determine custody of Daughter. Therefore, the West Virginia judgment of

---

[5] A child's physical presence is neither necessary nor sufficient to make a child custody determination. W.Va. §48-20-201(c); §452.740.3 RSMo.

dissolution and subsequent modifications were not void for lack of jurisdiction, so the St. Louis County trial court did not err in registering them in Missouri.  Point denied.

*Due Process in Second Modification*

Under Article IV §1 of the United States Constitution and 28 U.S.C. §1738, Missouri is required to give full faith and credit to judicial proceedings in other states unless there was (1) lack of jurisdiction over the subject matter, (2) failure to give due notice to the defendant, or (3) fraud in the procurement of the judgment.  In re R.C.P., 57 S.W.3d 365, 371 (Mo. App. S.D. 2001).  For her second point, Kelly asserts that the trial court should not have granted full faith and credit to the Berkeley County court's second custody modification because she received inadequate notice of the modification hearing.

Under the UCCJEA, persons living outside the forum state can be served in accordance with the laws of either the forum state or the state where service is made. W.Va. Code §48-20-108; §452.762.1 RSMo.  Notice must be given in a manner reasonably calculated to give actual notice.  Id.  Kelly contends that she was entitled to 30 days' notice under both West Virginia and Missouri rules of civil procedure, specifically W.Va. Rule 4(f) and Mo. Rule 55.25. Steven counters that those rules only govern initial complaints and responsive pleadings and do not apply to subsequent modification proceedings. He asserts, rather, that eight days' notice is sufficient under the rules governing service on motion hearings, specifically W.Va. Rule 6(d) (requiring seven days' personal service or nine days by mail) and Mo. Rule 44.01(d) (requiring five days' personal service or eight days by mail).  Neither approach exhausts the analysis.

Missouri's version of the UCCJEA clarifies that service of any petition for modification "shall be obtained, and responsive pleadings may be filed, as in any original

9

proceeding." §452.747.1. Respondents have 30 days after the date of service to file an answer. §452.747.2. Hence, Kelly would prevail under Missouri law. But West Virginia's enactment of the UCCJEA does not contain this procedural clarification, and this court's own research has uncovered no clear directive on the matter.[6] Absent a definitive statute or court rule prescribing a particular timeframe for notice of custody modifications, West Virginia precedent instructs us simply to follow the fundamental principle that due process requires reasonable notice and the opportunity to be heard. Brittany S. v. Amos F., 753 S.E. 2d 745, 750 (W.Va. 2012). For that inquiry, notice required by due process is fact-specific and will vary with the circumstances and conditions presented. State v. Elliott, 225 S.W.3d 423, 424 (Mo. 2007).

Here, for the broader context, we recall that Kelly was no stranger to the forum. She was a West Virginia resident when the divorce action commenced, she appeared in person and by counsel at the original hearing, and she appeared telephonically and by

---

[6] West Virginia divorce actions are commenced by the filing of a petition. Family Court Rule 9(a). Those involving children must be accompanied by a child support enforcement form. Id. The summons must be served on the respondent within 20 days of the filing of the petition. Family Court Rule 9(b). The respondent has 20 days to file an answer. Family Court Rule 9(c) and Civil Rule 12. Respondents served outside the state have 30 days to appear and defend or be deemed in default. Civil Rule 4(f). Motion hearings require seven days' notice by personal service or nine days' notice by mail. Civil Rule 6(d). Various versions of West Virginia's modification statute (previously §48-2-15 and now §48-9-401) have required that custody modification be requested by motion or petition. See Brittany S. v. Amos F., 753 S.E. 2d 745 at FN 12 (W.Va. 2012) (noting historical evolution of the statute's pleading requirement). Family Court Rule 50 currently requires a petition, and Family Court Rule 21(a) requires a hearing to be held within 45 days of the filing. But nothing in the foregoing identifies the applicable service rule or prescribes a specific timeframe for modifications. Even the state judiciary's *pro se* court forms fail to illuminate the matter: although the initial divorce answer instructions alert respondents to the 20-day deadline, the modification packet contains no answer form and identifies no notice period or deadline for a responsive pleading, stating only that the petition must be served on the opposing party before the hearing can be scheduled. Absent clear authority on the question of whether and which of the foregoing service rules apply to custody modifications in West Virginia, we cannot confidently conclude that Kelly's notice was non-compliant and will not, in this collateral attack, second-guess the Berkeley County court in that regard.

10

counsel in the first modification. Although Kelly claims that she was unable to obtain local counsel on eight days' notice before the second modification hearing, she had ample opportunity within that time to arrange to participate in the hearing telephonically or in the very least to request a continuance. She did neither and simply elected not to appear at all.  Additionally, Kelly could have moved to set aside the court's resultant order or she could have appealed it in West Virginia, but she didn't. Given these particular facts, we find that Kelly received reasonable notice and an opportunity to be heard sufficient to satisfy due process as required under West Virginia case law governing custody modifications. The trial court did not err in recognizing and registering the second modification.  Point denied.

## Result

We would deny Steven's motion to dismiss, and affirm the trial court's judgment. However, given the general interest and importance of the question presented in Kelly's first point, we transfer the case to the Supreme Court of Missouri pursuant to Rule 83.02.


_____
CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P.J., concurs.
Lisa Van Amburg, J., concurs.