

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

|  |  |  |
|---|---|---|
| | ) | No. ED106880 |
| | ) | |
| IN THE MATTER OF: | ) | Appeal from the Circuit Court |
| T.R. POTTER, JR. EXEMPT TRUST | ) | of the City of St. Louis |
| FBO JOHN M. POTTER. | ) | Cause No. 1422-PR00688 |
| | ) | |
| | ) | Honorable Michael K. Mullen |
| | ) | |
| | ) | Filed: November 5, 2019 |

### Introduction

This case involves the interpretation of an irrevocable trust created to be a tax-exempt generation-skipping transfer from Emily Magnus Potter (Grantor) to her descendants. David Oetting (Oetting), a co-trustee of the trust, appeals the judgment of the probate court interpreting the language of the trust to allow income distributions under the circumstances here to Grantor's grandson, Respondent John M. Potter (Potter); finding no breach of fiduciary duty by the corporate trustee, Respondent U.S. Bank; removing Oetting as co-trustee of the trust; and granting attorney's fees and expenses in favor of Potter and U.S. Bank. Because we find the probate court improperly interpreted the trust as it relates to the trustees' ability to request Potter's financial information before authorizing an income distribution from the trust, we reverse the judgment in part and remand the probate

court's order regarding attorney's fees and expenses. However, we find substantial evidence to support the probate court's conclusion that U.S. Bank is not liable for breach of trust under the circumstances here, and we agree Oetting's removal as co-trustee was appropriate, thus we affirm the judgment in part.[1]

Background

In 1988, Grantor funded the trust at issue here pursuant to the tax laws applicable at the time, which allowed such trusts to transfer up to one million dollars across generations without incurring generation-skipping tax consequences. When Grantor originally executed the trust, the trust estate was divided into two equal portions, held in two separate trusts—the T.R. Potter, Jr. Exempt Trust (TRP Trust) and the Edward M. Potter Exempt Trust—for each of her sons and their descendants. Each trust had a corporate trustee and an individual trustee. Grantor's sons, T.R. Potter, Jr. (Randy Potter), and Edward Potter, acted as individual trustees for their respective trusts, along with Mercantile Bank as the corporate trustee for each trust.

Randy Potter had two sons, Respondent Potter and T.R. Potter, III (Tom Potter). Randy Potter died in 2008. By its terms, the TRP Trust and its assets then divided into two equal shares, one each for the benefit of Potter and his brother Tom Potter, and their respective descendants. After Randy Potter's death, Oetting became the individual co-trustee of each share of the trust under the terms of the TRP Trust. Shortly thereafter, Potter asked Oetting to resign as co-trustee of Potter's share of the TRP Trust, but Oetting declined. U.S. Bank is currently the corporate co-trustee of the TRP Trust as the successor to Mercantile Bank. Potter is the sole beneficiary of his share of the TRP Trust during his

_____

[1] U.S. Bank's and Potter's motions for attorney's fees on appeal are denied.

2

lifetime. Potter currently has one child, John M. Potter, Jr. (Jack Potter), born in 2014, who is a contingent remainder beneficiary of Potter's share of the TRP Trust. Tom Potter is also a contingent remainder beneficiary of Potter's share of the trust, taking Potter's share of the trust only if Potter has no descendants at his death.

From 2008 to 2013, Oetting and Potter did not communicate about the trust. In June of 2012, Potter contacted Ann Wells (Wells), the trust officer at U.S. Bank at the time, to request a distribution of income from his share of the trust in order to provide cash flow for his real estate business. Wells believed the terms of the trust authorized income distributions to Potter under the circumstances, and she made arrangements to disperse income from the trust into Potter's personal revocable trust account held at U.S. Bank. Though the terms of the trust required both trustees to consent to income distributions, Oetting testified no one from U.S. Bank consulted him as co-trustee about such distributions. In November of 2012, Wells suffered a stroke and does not remember the details regarding the distribution of income. She testified that U.S. Bank regularly consulted Oetting regarding other matters for the trust, so if she failed to consult him regarding the income distributions to Potter, it was an oversight. U.S. Bank continued to send semi-annual statements to Oetting reflecting the Potter income distributions. From July 1, 2012 through March 31, 2014, U.S. Bank made monthly distributions of the net income of the trust to Potter totaling $211,030.15.

In January of 2014, Mark Sandvos became the trust officer for Potter's share of the TRP Trust following Wells' retirement. In reviewing the trust file, Sandvos learned Oetting was the co-trustee, but he could not determine from the file whether Oetting had been consulted regarding those income distributions to Potter. Sandvos' supervisors

3

contacted Oetting,[2] who objected to the income distributions. Potter continued to request income distributions, but Oetting requested Potter's personal financial information before responding to Potter's requests. Potter and U.S. Bank withheld Potter's financial information, maintaining that Oetting did not have authority under the trust to require Potter to provide such information. Oetting asserted that it was necessary under the terms of the trust to consider Potter's financial state before income could be distributed. In light of this dispute, U.S. Bank ceased distributions to Potter in April of 2014.

Faced with Potter's continued requests for income distributions, in October of 2014, U.S. Bank filed a petition for instructions in the probate court, asking the probate court to interpret the terms of the trust regarding the circumstances under which income from the trust may be distributed to Potter as the current sole beneficiary. Oetting filed a counterclaim alleging breach of fiduciary duty against U.S. Bank for unilaterally making income distributions (Count I), requesting declaratory judgment that Oetting was not liable for any breach of trust (Count II), and seeking compensation for extraordinary trustee services, attorney's fees, and expenses (Count III). Potter filed a cross-claim asserting breach of fiduciary duty against Oetting (Count I), seeking reformation of the trust's provision for requesting that a trustee resign (Count II), requesting removal of Oetting as the individual trustee (Count III), and seeking to modify the trust terms to allow the corporate trustee sole authority to make income distributions from the trust (Count IV).

During the pendency of the suit, Potter's wife, Emily Potter, filed a ratification on behalf of their minor son, Jack Potter, consenting to U.S. Bank's distribution of income from the trust to Potter. Tom Potter also filed a ratification as a contingent remainder

---

[2] Oetting's position at trial was that he discovered the income distributions and contacted U.S. Bank, but the probate court found Oetting not credible on this factual issue.

4

beneficiary. U.S. Bank filed a motion for summary judgment on its petition for instructions, which the probate court granted. The probate court concluded the trust agreement authorized income distributions to Potter without consideration of his financial circumstances.

The probate court conducted a bench trial on the counterclaims and cross-claims, after which it entered judgment first affirming its prior summary judgment, finding nothing offered at trial changed its former interpretation of the trust agreement. The probate court also entered judgment for U.S. Bank on Oetting's Counts I (breach of fiduciary duty) and III (request for extraordinary trustee fees). Finding no breach of fiduciary duty by any party, the probate court granted Oetting's request for declaratory judgment in Count II of his petition. Regarding Potter's cross-claims, the probate court found in favor of Oetting on Potter's breach of fiduciary duty claim in Count I, granted Potter's request to remove Oetting in Count III, and dismissed the remaining cross-claims as moot. Oetting appeals.[3]

Discussion

As an initial matter, U.S. Bank argues that Oetting lacks standing to pursue the present appeal because trustees have no interest in the corpus of the trust and therefore are not aggrieved parties. U.S. Bank relies on In re Knichel, 347 S.W.3d 127 (Mo. App. E.D. 2011), in which this Court held that an appointment as a special trustee for a decedent's estate did not create a personal right, nor any pecuniary interest in the subject matter of the will contest, that would have entitled the special trustee to challenge his removal on appeal.

---

[3] Potter originally filed a cross-appeal, challenging the probate court's ruling finding no breach of fiduciary duty by Oetting, as well as the court's award of attorney's fees, as the probate court did not award all of the fees submitted by Potter. Potter voluntarily dismissed his cross-appeal during the pendency of these appellate proceedings.

5

Id. at 130-32. However, a number of circumstances distinguish the present case, and we find that Oetting does have standing to assert his claims on appeal.

First, as this Court noted in Knichel, the statutes governing trusts in chapter 456 contain no provision regarding appellate standing, thus we look to the general appeals statute, Section 512.020.[4] Knickel, 347 S.W.3d at 130. This section grants a right of appeal to "[a]ny party to a suit aggrieved by any judgment of any trial court in any civil cause," except where prohibited by the Missouri Constitution or limited by statute. Section 512.020. The appellant in Knichel asserted only personal claims of removal as trustee, loss of trustee fees, and damage to his reputation, which did not constitute a pecuniary interest adversely affected by the judgment. 347 S.W.3d at 131. Unlike the appellant in Knichel, Oetting is an aggrieved party in that he currently is subject to a money judgment for attorney's fees and expenses. Further, while Oetting does not have a personal interest in the trust, trustees are permitted as fiduciaries to pursue claims on behalf of beneficiaries who are aggrieved by a judgment of a lower court. Knichel, 347 S.W.3d at 130 (applying definition of "interested persons" in Section 456.1-103 of Missouri Uniform Trust Code). Oetting here argues that Potter's son and any future children, as contingent remainder beneficiaries of the trust assets, are aggrieved by the probate court's interpretation of the trust. See Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon, 231 S.W.3d 158, 168 (Mo. App. W.D. 2007) (finding contingent remainder beneficiaries have standing to appeal interpretation of trust and removal of trustees). Thus, we find Oetting has standing to bring the present appeal.

---

[4] All statutory references are to RSMo. (Supp. 2014), unless otherwise indicated.

Oetting raises four points. In Point I, he argues that the probate court erred in granting summary judgment in favor of U.S. Bank on its petition for instructions because the language of the trust permits trustees to consider the financial resources of the beneficiary in determining whether to make a discretionary distribution of income. In Point II, Oetting argues the probate court erred in its judgment on Oetting's counterclaim for breach of fiduciary duty, specifically the court's finding that U.S. Bank's unilateral distribution of income did not result in harm to the beneficiaries because the remainder beneficiaries ratified U.S. Bank's actions. In Point III, Oetting argues the probate court erred in removing Oetting as the individual co-trustee because the court's interpretation of the trust language led to an erroneous conclusion that Oetting made improper demands for Potter's financial information. Finally, in Point IV, Oetting argues the probate court abused its discretion in awarding attorney's fees and costs to U.S. Bank and Potter. We discuss each in turn.

Point I

Oetting argues the probate court erred in concluding that the language of the trust does not allow a trustee to examine a beneficiary's financial information before permitting a discretionary distribution of trust income. We agree.

Our review of summary judgment is essentially de novo. ITT Commercial. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the non-moving party. Id. The moving party must show there is no genuine dispute as to material facts and that the movant has an undisputed right to judgment as a matter of law. See id. at 380. Here, while we find there is no genuine

7

factual dispute, we disagree with the probate court's interpretation of the trust language as a matter of law.

"The paramount rule of construction in determining the meaning of trust provisions is that the grantor's intent is controlling." Feinberg v. Adolph K. Feinberg Hotel Trust, 922 S.W.2d 21, 25 (Mo. App. E.D. 1996). Because language and circumstances can vary greatly, we must examine the specific language as well as the surrounding circumstances, and Grantor's intention must govern. See Winkel v. Streicher, 295 S.W.2d 56, 61 (Mo. banc 1956). "We ascertain the intent of [Grantor] from consideration of the trust instrument as a whole." Hertel ex rel. Hertel v. Nationsbank N.A., 37 S.W.3d 408, 410 (Mo. App. E.D. 2001).

Article Second of the trust contains the relevant provisions regarding distribution of income. Before Randy Potter's death, the TRP Trust limited distributions of income as follows:

> The Trustees shall use and apply so much of the net income of this trust as they may deem necessary or advisable primarily for the proper health, education, maintenance, and support of Grantor's son, RANDY, of the children of Grantor's son, RANDY, and of the descendants of the children of Grantor's son, RANDY, with no requirement of equality among such beneficiaries. Unused income shall be accumulated and added to principal annually.

Once the trust divided after Randy Potter's death, the current share for Potter's benefit no longer has a stated purpose for health, education, maintenance, or support. Rather, the trust provides the following for Potter's share:

> The Trustees shall use and apply so much of the net income of each descendant's share (separate trust) as they may deem necessary or advisable to or for the benefit of such descendant.[5]

---

[5] The language continues with qualifications applicable when Potter is under the age of 21. As Potter has been over age 21 throughout the pendency of this litigation, these qualifications are irrelevant here.

Finally, the trust grants Potter "a limited power of appointment over the entire corpus or any part thereof of his . . . trust share" to pass it on through his will to either Potter's descendants or other descendants of Grantor.

The issue before us is whether the present standard for distributing trust income— "necessary or advisable to or for the benefit of" Potter—allows the trustees to examine Potter's financial information before authorizing a distribution of income. Based on the particular language of the trust and the circumstances here, we conclude Grantor intended that the trustees have discretion regarding distribution of income, and that discretion includes requesting Potter's financial information before authorizing income distributions.

Missouri cases considering "necessary or advisable" standards begin with the question of whether the trust constitutes an absolute gift or is dependent on the beneficiary's need. See Hertel, 37 S.W.3d at 410 (citing Winkel, 295 S.W.2d at 61; Nationsbank, N.A. v. Tegethoff, 18 S.W.3d 22, 26 (Mo. App. E.D. 2000)). If the trust is an absolute gift, the trustees may not consider the private income of the beneficiary. Id. However, where the gift includes a provision for distribution based on need, the trustees must consider the beneficiary's income in determining the beneficiary's need. Id.

Provisions designating that all income shall be distributed to the beneficiary, with no further qualification, indicate an absolute gift. See Winkel, 295 S.W.2d at 59-60 (trustee "shall pay the net income"); In Estate of McKenna, 500 S.W.3d 850, 861-62 (Mo. App. E.D. 2016) (trustee "*shall* pay [beneficiary] the income"); Hertel, 37 S.W.3d at 409 (noting trust "provided that all income is to be paid to [beneficiary]"). In such a case, the trustees have no discretion regarding distribution of income: they simply pay all of the income to

9

the beneficiary. It is undisputed that the language at issue here is not such an unqualified mandate.

Rather, the plain language of the trust, allowing distribution of income as the trustees "*may* deem necessary or advisable" (emphasis added) indicates that the trustees are to exercise their discretion in determining what is necessary or advisable. See Hertel, 37 S.W.3d at 411 (use of word "may" grants trustees discretion to distribute in amount they consider necessary or advisable). In the case of discretionary language, courts have reached differing results about consideration of a beneficiary's other resources, depending on the context.

On one hand, courts have found an absolute gift where the trust indicates that the grantor intended to provide the beneficiary's full support from the trust. For example, in Winkel v. Streicher, the Missouri Supreme Court found the following language indicated an absolute gift of support: "trustee shall pay . . . any part of the corpus . . . as he in his sole discretion deems necessary . . . for the support and maintenance of [beneficiary]." 295 S.W.2d at 62. The Court reasoned, "when this kind of language is used the inference (in the absence of some indication to the contrary) is that the intent was for the beneficiary to receive his full support from the trust estate." Id. Further, "the discretion of the trustee is limited to the determination of the amount necessary for that purpose; and [] the trustee is not authorized to withhold what is reasonably necessary for that purpose because of the provision made for [beneficiary] in the subsequent will of her mother." Id. Thus, where a grantor intends to provide support for the beneficiary, the trustees' discretion extends only to determining the amount necessary to provide support and may not include consideration of a beneficiary's other resources. See also McKenna, 500 S.W.3d at 861-62 (trustee "shall

10

pay [beneficiary] such amounts of the principal . . . as from time to time shall be reasonably necessary for [beneficiary's] support, maintenance and health" indicated an intent that the beneficiary receive full support from the trust without consideration of other resources); In re Coats Trust, 581 S.W.2d 392, 396 (Mo. App. 1979) (trust intended as support trust regardless of beneficiary's other resources; trustee's only discretion relates to amount distributed for that purpose).

On the other hand, where the context does not indicate a beneficiary should be supported fully from the trust, trustees have more discretion to determine need and therefore may consider a beneficiary's other resources. In Hertel, the trust provided an absolute gift of income to the beneficiary, and additionally allowed encroachments of principal for the beneficiary's "health, education, maintenance and support . . . from time to time and in such amounts as the Trustees *may* consider necessary or advisable under the circumstances." 37 S.W.3d at 410-11 (emphasis added). This Court found that the discretionary language "may," the "necessary or advisable" standard, and other provisions indicating the grantor's intent to preserve the trust corpus for successor beneficiaries, indicated that the principal of the trust should be invaded only in cases of need. Id. at 411-12. The trustees had discretion to determine how much, if any, of the principal was necessary to distribute, and they were permitted to consider the beneficiary's other financial resources in making such a determination. Id. at 413.

Here, while the TRP Trust language did specify a purpose for income distributions that included support, the language of Potter's share of the trust—"trustees shall use and apply so much of the net income . . . as they may deem necessary or advisable to or for the benefit of [Potter]"—does not manifest a purpose that the trust should be used for Potter's

11

support.  Unlike the language in Winkel, the present trust language does not indicate Grantor's intent to provide an absolute gift of support.  Rather, the trustees have discretion to determine what amounts of income would be necessary or advisable to benefit Potter, including none at all.  In such a case, our precedent suggests the trustees would be authorized to consider Potter's other resources before granting trust income distributions.  See Hertel, 37 S.W.3d at 410.  Likewise, the Restatement (Third) of Trusts notes that where a trust does not address the question of whether the trustees take a beneficiary's other resources into account before making distributions, "the general rule of construction" is that the trustee "is to consider the other resources but *has some discretion* in the matter." § 50, cmt. e.

Additionally, the language here regarding the purpose of distributions, authorizing discretionary distributions for the "benefit" of Potter, is a less objective standard.  The Restatement distinguishes a "benefit" standard from the more objective "support standard" that appears in the trust language discussed above.  § 50, cmt. d(3).  A "benefit" standard "may diminish the relevance of the beneficiary's other resources."  § 50, cmt. d(3).  However, "[t]hose resources, . . . may have some bearing on the overall reasonableness of an exercise of the discretionary authority."  § 50, cmt. e.  A trustee may still "properly resist any reasonable request by the beneficiary."  § 50, cmt. d(3).  Finally, a less objective standard "may not facilitate a beneficiary's efforts to obtain judicial intervention to compel distributions," because the decision rests within the discretion of the trustee.  Id.

Here, the less objective language of the trust indicates that the trustees have wide discretion to determine whether a distribution would benefit Potter and to make such a distribution in whatever amount they deem necessary or advisable for that purpose.

12

Potter's stated purpose was to provide cash flow for his real estate business, which could be a reasonable purpose for distributions under the discretionary language of the trust at issue. See Restatement (Third) of Trusts § 50, cmt. d(3) ("For example, a 'benefit' standard might make it reasonable for a trustee to make substantial distributions to provide a beneficiary with capital needed to start a business"). However, because this language does not indicate an absolute gift, the trustees have authority to examine Potter's other financial resources in making their decision regarding what is "necessary or advisable." See Hertel, 37 S.W.3d at 410. Moreover, like the trust in Hertel, the present trust indicates an intent that the corpus of the trust will pass to Potter's descendants free of generation-skipping tax, which the trustees must take into account in exercising their discretion. See id. at 412.

While the trustees have authority to consider Potter's other financial resources before making an income distribution, the broad discretion granted to the trustees does not require them to do so. See Restatement (Third) of Trusts § 50, cmt. e. Likewise, Potter is not compelled to provide his financial information to the trustees upon request, but the trustees may take such refusal into account in exercising their discretion.

Thus, the probate court erred as a matter of law when it interpreted the trust as prohibiting the trustees from considering Potter's other financial resources before making a discretionary distribution of trust income. Oetting's request to see Potter's financial information in this case was reasonable. While Potter was not obligated to provide such information, the trust permits Oetting to request it and allows for the possibility that the trustees could reasonably deny Potter's request for income distributions in light of Potter's financial circumstances (or refusal to provide evidence of his financial circumstances), as they see fit. Point granted.

## Point II

Oetting argues the probate court erred in its judgment on Oetting's counterclaim for breach of fiduciary duty. Specifically, Oetting protests the probate court's finding that U.S. Bank's unilateral distribution of income did not result in harm to the beneficiaries due to the ratifications of the Bank's actions executed by Emily Potter on behalf of Jack Potter and by Tom Potter. We agree that the Bank's actions here did not harm the beneficiaries, but we disagree that the ratification by Emily Potter was proper.

The issues raised in this point and the remaining points on appeal stem from the probate court's judgment after a bench trial, thus our review is governed by the principals set forth in Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). We affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. at 32. We defer to the probate court's findings of fact. Brawley v. McNary, 811 S.W.2d 362, 365 (Mo. banc 1991). However, we review questions of law de novo. Pearson v. Koster, 367 S.W.3d 36, 43 (Mo. banc 2012).

A breach of fiduciary claim has four elements: (1) existence of a fiduciary duty; (2) breach of such duty; (3) causation; and (4) harm. Brown v. Brown, 530 S.W.3d 35, 41 (Mo. App. E.D. 2017). The probate court found that Oetting could not show that the beneficiaries suffered harm as a result of U.S. Bank's actions and thus found U.S. Bank was not liable for breach of fiduciary duty. The probate court reasoned that because the remainder beneficiaries ratified U.S. Bank's actions in distributing income to Potter, Oetting both lacked standing to bring his claim on behalf of the beneficiaries and could not show any harm to the beneficiaries.

14

First, we agree that the record lacks evidence that U.S. Bank's distribution of income to Potter resulted in harm to the beneficiaries, though we differ with the probate court as to the basis for this conclusion. "The element of harm cannot rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably decide the case." Robert T. McLean Irrevocable Trust u/a/d March 31, 1999 ex rel. McLean v. Ponder, 418 S.W.3d 482, 496 (Mo. App. S.D. 2013). Oetting claimed U.S. Bank breached its fiduciary duty by failing to obtain his agreement as co-trustee to the income distributions to Potter, in violation of the trust's terms that both trustees must agree to any income distributions.[6] The resulting harm, according to the allegations in Oetting's counter-claim, was that Potter and the remainder beneficiaries would lose access to the tax-exempt status that the income would have had if it had remained in the trust.

Oetting is correct that the trust document reveals Grantor's intent that the trust assets would pass to her descendants free of generation-skipping taxes, and that unused income would become part of the trust principal to be passed down to Potter's descendants. However, the trust also reflects Grantor's intent to allow for the possibility that Potter could receive income from the trust. Further, as we noted in Point I, the stated purpose for the distributions at issue here—to provide cash flow for Potter's business—is a reasonable purpose for which the trustees could choose to authorize income distributions under the

---

[6] Oetting also alleged U.S. Bank breached its fiduciary duty by failing to provide Potter's personal financial information to Oetting so that he could make an informed decision regarding income distributions. However, U.S. Bank owes a duty of confidentiality to Potter regarding his personal accounts, and U.S. Bank withheld Potter's information from Oetting at Potter's direction. Oetting's complaint regarding failure to share financial information rests with Potter, and we have discussed the implications of Potter's failure to share his financial information with the trustees in Point I, *supra*.

      Oetting further alleged that U.S. Bank engaged in self-dealing because the income distributions went to secure a line of credit from U.S. Bank to Potter. The probate court found that the income distributions went into Potter's personal revocable trust account held at U.S. Bank but controlled by Potter, and that Oetting did not offer any evidence of self-dealing by U.S. Bank. Oetting does not appeal this finding.

15

language of the trust. Therefore, the trust contemplates that trust income could be utilized in this way. The act of distributing income itself for such purpose in this circumstance was not a violation of the trust terms, and thus did not harm the beneficiaries.

The violation of trust terms here is from U.S. Bank's failure to consult Oetting regarding the income distributions. At the same time, the record supports the probate court's finding that U.S. Bank mailed statements to Oetting reflecting the income distributions over nearly two years, and Oetting did nothing in response. However, based on the foregoing, neither of these failures by U.S. Bank and Oetting resulted in harm to the beneficiaries.

Despite U.S. Bank's failure to follow the proper procedure laid out in the trust, not only does the trust language provide for income distributions, but the record further shows that the distributions of trust income here did not decrease the trust principal. Cf. Matter of Wilma G. James Trust, 487 S.W.3d 37 (Mo. App. S.D. 2016) (though sale of trust asset "was not in strict compliance with [trust language]," trust did allow for such sale, and no evidence that loss or damage resulted from trustee's failure to account). In fact, the statements from the time period in which U.S. Bank distributed trust income nevertheless show slight increases in overall market value of the trust over each six-month time period. Presumably, this is one reason Oetting may not have noticed Potter's income distributions: the trust was performing well despite such distributions.

However, even if we were to assume harm to the contingent remainder beneficiaries resulted from the income not being added to the trust principal, such a conclusion would be speculative.[7] We do not know whether Oetting would have consented to the income

---

[7] Moreover, there is still the question of the efficacy of the ratification of Tom Potter on behalf of himself and all contingent remainder beneficiaries, including Jack Potter, which we do not reach in this appeal.

16

distributions had he been informed of Potter's financial state and the purpose for distributions ahead of time. Because such distributions are contemplated by the trust, had Oetting agreed to them, there would be no basis for a breach of fiduciary duty claim. Under the particular circumstances of this case, we conclude U.S. Bank is not liable for breach of fiduciary duty, and we affirm the probate court's judgment in this respect.

However, due to the possibility that ratifications may arise in the future while Jack Potter is a minor, we address the probate court's finding regarding Emily Potter's ratification on behalf of her son, Jack Potter, of U.S. Bank's distribution of income to her husband, Potter. While the Missouri Uniform Trust Code, Section 456.10-1009, does allow for the possibility that a beneficiary can consent to a trustee's conduct that would otherwise constitute a breach of fiduciary duty, there are limitations regarding ratification on behalf of minors. Section 456.3-303 provides:

> *To the extent there is no conflict of interest* between the representative and the person represented . . . with respect to a particular question or dispute:
> . . .
> (4) a parent may represent and bind the parent's minor or unborn child if a conservator, conservator ad litem, or guardian for the child has not been appointed.

(emphasis added). Parents may represent their minor children in trust matters only to the extent there is no conflict of interest.

The probate court found that Emily Potter was able to set aside all interests but those of her son and that she did not have a conflict of interest in representing him in ratifying U.S. Bank's distribution of trust income, but we disagree. Emily Potter testified in her deposition that prior to Potter requesting income distributions, she discussed such distributions with him, and they decided to use the income as part of their financial strategy

17

as a family. Their nickname for it was "investing in [Potter]," and part of the plan was to invest in commercial real estate, with a goal of reaping a long term investment to support future generations of their family. Jack Potter is an intended beneficiary of their family financial plan, but Emily Potter would clearly benefit from such a plan as well, even though the income distributions did not come directly to her. The use of income from the trust would have relieved Potter and his wife Emily from using marital funds to provide cash flow for Potter's business, and certainly any income from any business success would benefit their family as a whole, including Emily Potter.

Alternatively, had the income remained in the trust here, it would have been added to the trust principal. Jack Potter is currently the first remainder beneficiary of the corpus of the trust, thus any income not distributed to Potter would become part of the trust principal to be passed on to Jack Potter. Emily Potter would have no benefit from the trust income in such a scenario. Because of her indirect benefit from the use of the trust income for Potter's business, we do not agree that Emily Potter was free of a conflict of interest under the circumstances here. It is unclear whether an appointed guardian, acting for and in Jack Potter's interests, would choose to ratify an uncertain real estate investment over a certain future benefit of an increased amount of the trust principal. Perhaps a conservator, conservator ad litem, or guardian for Jack Potter would choose to ratify the distributions, but the guardian would be free of any personal stake in the matter, and under the circumstances here, Emily Potter was not. See cmt. to Uniform Trust Code § 456.3-303 ("A typical conflict would be where the fiduciary or parent seeking to represent the beneficiary is either the trustee or holds an adverse beneficial interest"). Thus, we do not find Emily Potter's ratification on behalf of Jack Potter was proper.

18

Nevertheless, we have found the record supports the probate court's conclusion that U.S. Bank's actions did not constitute a breach of trust resulting in harm to the beneficiaries, thus the ratifications are irrelevant in this particular case. Point denied.

Point III

Oetting argues the probate court erred in removing Oetting as co-trustee because, without the probate court's incorrect interpretation of the trust language, there was no basis for Oetting's removal. We disagree. Notwithstanding the probate court's misinterpretation of the trust language, we find substantial evidence in the record supporting Oetting's removal as co-trustee.

Removal of a trustee is governed by Section 456.7-706:

> 2. The court within its discretion may remove and replace a trustee under the following circumstances:
> . . .
> (2) lack of cooperation among cotrustees substantially impairs the administration of the trust; [or]
>
> (3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries[.]

Part of the probate court's rationale for removing Oetting as co-trustee was Oetting's interpretation of the trust language. While we have found that the probate court erroneously interpreted the trust language regarding income distributions, we still find substantial evidence to support Oetting's removal as co-trustee, given his lack of careful review of the trust documents and failure to act with the bank to exercise discretion regarding Potter's continued requests for trust income distributions.

The distributions of trust income here began in July of 2012, and they continued monthly until March of 2014. Oetting received semi-annual statements for the trust, and

19

he testified he received statements for the periods July 1 through December 31, 2012; January 1 through June 30, 2013; and July 1 through December 31, 2013. Each of these three statements clearly showed Potter's income distributions in multiple places. The second page of each statement contained a "Market Value Summary" with a "Beginning Market Value" followed by eight to nine line items for interest, dividends, taxes, fees, et cetera, and then showing an "Ending Market Value." The fourth line item on each Summary was entitled "Paid To/For Beneficiaries," and reflected the total income distributions for the six-month statement period. Additionally, following the summary, each statement included transaction details, showing each monthly Potter income distribution. Each income distribution is labeled a "cash disbursement," paid to an account number, and then contains the notation, "net income distribution." The statements also reflected cash disbursements for trustee fees, but Oetting acknowledged that those transactions are distinguishable on the statements from the cash disbursements for net income distribution.

Oetting's testimony was that he did review each of these statements when he received them, but his focus was on how the investments were performing, and he would not have taken note of the income distributions. When asked whether he noticed Potter's income distributions, he responded, "If I did it didn't strike me. That's all I can say. I was interested in . . . the Asset Summary and then the investments themselves." We find Oetting's actions in this regard constitute a failure to administer the trust effectively. According to the record, reviewing the statements in detail is not an onerous or time-consuming task: Oetting receives two statements per year, which are approximately 16

20

pages in length. The Potter income distributions appeared in multiple places, such that even a cursory overview should have alerted him to their presence.

According to Oetting's testimony, the only thing that drew his attention on the statement he received in early 2014 was Wells' name missing from the statement due to her retirement. Had there been no change in personnel and no one from U.S. Bank reaching out to Oetting, by his own admission, he may not have noticed Potter's income disbursements at all. Further, Oetting certainly was aware of the trustee fees as he contacted Wells around the time she was returning to work after her stroke to discuss why the fees he received for Potter's share of the trust were less than those he received for acting as the individual co-trustee for Tom Potter's share of the trust. Oetting's failure to examine the statements thoroughly and note Potter's income distributions in multiple places on three consecutive statements shows a lack of attention to the trust activity that he is paid to administer.

Additionally, the evidence established that Oetting had not spoken to Potter since Oetting became trustee in 2008, and he did not attempt to contact Potter when the present dispute arose. Though Oetting maintained that his refusal to agree to continued income distributions was due to Potter's failure to share the reason for such distributions, he never attempted to contact Potter but continued to demand that U.S. Bank provide such information as well as Potter's financial information. According to his testimony, Oetting felt "stonewalled." Yet, he never attempted to contact the beneficiary he represented to seek the information he needed to exercise his discretion and administer the trust in this respect.

21

Further, though Oetting properly understood the purpose of the trust was to preserve the funds for Potter's descendants, rather than cooperate with U.S. Bank to make a decision regarding Potter's request for continued income distributions after April of 2014, Oetting simply refused to respond to such requests, citing the failure of Potter and the bank to provide the necessary information for him to approve or disapprove. Oetting further threatened to use his authority under the trust to remove U.S. Bank as the corporate co-trustee. He testified that he no longer trusts U.S. Bank and does not believe he can "be a co-trustee with them given the behavior that [he's] witnessed here."

Likewise, Potter has sought to remove Oetting as the individual co-trustee since Oetting became co-trustee, and he has never tried to contact Oetting at any point to discuss his requests for continued income disbursement and share his reasons for such requests. While we are cognizant of the fact that hostility between the trustee and beneficiary alone is not sufficient grounds for removal of a trustee, such hostility along with other conduct by the trustee does constitute grounds for removal. Whan v. Whan, 542 S.W.2d 7, 11-12 (Mo. App. 1976). Here, the hostility between Oetting and Potter, along with Oetting's mistrust of U.S. Bank and his failure to administer the trust by examining the statements he received, provides substantial evidence to support the probate court's removal of Oetting as co-trustee under Section 456.7-706. Point denied.

### Point IV

Oetting appeals the probate court's judgment finding U.S. Bank and Potter are entitled to have their attorney's fees, costs, and expenses paid by Oetting. In light of our decision reversing the probate court's judgment regarding the interpretation of the trust, we must reverse the probate court's award in this respect.

Section 456.10-1004 grants the probate court discretion, "as justice and equity may require, [to] award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Here, the probate court found Oetting misinterpreted the trust and unnecessarily drew out the litigation, thus the court ordered Oetting to pay U.S. Bank's costs of $11,448.17 and attorney's fees of $130,963.57; as well as Potter's costs of $21,000 and attorney's fees of $105,666.60. Because we have found Oetting properly took issue with U.S. Bank's and the probate court's interpretation of the trust on behalf of the contingent remainder beneficiaries, we must reverse the probate court's award of costs and fees as inequitable in light of our decision here. We remand to the probate court with instructions to determine an equitable award of costs and fees, if any, in accordance with this opinion. However, we note that all parties on appeal stated they were not seeking their costs to be paid from the trust, nor do we find such an order would be appropriate under the circumstances here. See Hammerstrom v. Commerce Bank of Kansas City, N.A., 808 S.W.2d 434, 438-38 (Mo. App. W.D. 1991) (noting where no benefit to trust estate is demonstrated from party's challenge, award for attorney's fees from trust cannot normally be made). Point granted.

Conclusion

In light of the foregoing, we reverse the judgment of the probate court as it relates to U.S. Bank's request for instructions. We find the language of the trust authorizes but does not require the trustees to consider Potter's other financial resources before granting an income distribution. Potter is similarly free to share or not share his financial information with the trustees, but the trustees may take any refusal into account in exercising their discretion. Due to our reversal of the probate court's judgment in this

23

respect, we also reverse the court's judgment regarding attorney's fees and expenses, and we remand to the probate court to reconsider any such award in accordance with this opinion.

While we find that Emily Potter's ratification of U.S. Bank's actions was improper here, we conclude that substantial evidence in the record shows the income distributions under the circumstances did not result in harm to the beneficiaries, thus we affirm the trial court's judgment denying Oetting's claim for breach of fiduciary duty against U.S. Bank. Additionally, we find the probate court's removal of Oetting as co-trustee is supported by substantial evidence and is not against the weight of the evidence, thus we affirm the judgment in this respect.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

_____
Gary M. Gaertner, Jr., Judge

Colleen Dolan, C.J. and
Kurt S. Odenwald, J., concur.

24