IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
EMILY RIEGEL, ALLAN PICKERT )
AND JOANN PICKERT, )
 )
 Respondents, )
 )
v. ) WD84048
 )
DAVID G. JUNGERMAN, ) Opinion filed: May 25, 2021
AS TRUSTEE OR CO-TRUSTEE )
OF THE JUNGERMAN FAMILY )
IRREVOCABLE TRUST, )
 )
 Appellant. )

 APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE KEVIN D. HARRELL, JUDGE

 Division One: Anthony Rex Gabbert, Presiding Judge,
 Edward R. Ardini, Jr., Judge and Thomas N. Chapman, Judge

 David Jungerman appeals from a judgment1 in a wrongful death action arising from the

killing of attorney Thomas Pickert. Pickert’s wife and parents (“Plaintiffs”) initiated this action in

the Circuit Court of Jackson County, alleging that Jungerman shot and killed Pickert after Pickert

had obtained a multi-million-dollar judgment for his client against Jungerman, and that Jungerman

conspired with other defendants to hide and transfer assets to defraud creditors, including

Plaintiffs. The other defendants named were Jungerman in his capacity as trustee and/or co-trustee

1
 Jungerman appeals from the trial court’s “Judgment and Order Approving Confidential Partial Wrongful Death
Settlement Pursuant to R.S.Mo. § 537.095 and § 515.610 and Approving Distributions to Minor Beneficiaries” entered
on August 21, 2020.
of the Jungerman Family Irrevocable Trust (“Trust”); Jungerman’s daughter, Angelia Buesing,

individually and in her capacity as trustee and/or co-trustee of the Trust; Jungerman Farm

Corporation (“Farm Corporation”); and Baby-Tenda Corporation (“Baby-Tenda”).

 A settlement agreement was reached between Plaintiffs and all defendants except

Jungerman and Baby-Tenda, and the settling parties sought court approval of the partial settlement

agreement. Jungerman objected to the settlement on the ground that, in his capacity as trustee, he

was entitled to participate in settlement negotiations and approve any settlement involving the

Trust or Trust assets, which he had not been permitted to do. The trial court overruled his objection,

finding that Jungerman had resigned as trustee in 2018—prior to the initiation of this lawsuit—

and that Buesing was the sole trustee with authority to settle claims on behalf of the Trust. As such,

the trial court found that Jungerman lacked standing to challenge the partial settlement agreement.

The trial court also found that Jungerman’s objection to the settlement was untimely pursuant to

section 515.610, RSMo.2 Thereafter, the trial court entered its judgment approving the partial

settlement agreement, and it is from that judgment Jungerman appeals in his capacity as the alleged

trustee of the Trust.

 Jungerman asserts the trial court erred in finding he lacked standing to challenge the partial

settlement agreement and did not timely object to the settlement. We do not reach the merits of

Jungerman’s claims of error, however, because Jungerman lacks standing to bring this appeal and

thus we are required to dismiss it.

 Factual and Procedural Background

 In 2012, Jungerman shot and seriously injured Jeffery Harris. Harris retained Pickert to

represent him in a personal injury lawsuit against Jungerman. The jury in that lawsuit returned a

2
 All statutory references are to RSMo 2016.

 2
$5.75 million verdict in favor of Harris. The trial court entered judgment on the jury verdict, and

that judgment was affirmed on appeal. See Harris v. Jungerman, 560 S.W.3d 549, 563 (Mo. App.

W.D. 2018). While the appeal was pending, Pickert began proceedings against Jungerman to

execute on his assets to satisfy the Harris judgment. On October 24, 2017, Jungerman was served

with documents related to those execution efforts.

 On October 25, 2017, Pickert was shot and killed in front of his home after walking his

children to school. Jungerman has been charged with first-degree murder and armed criminal

action for causing Pickert’s death. That criminal case remains pending.

 On May 17, 2018, Plaintiffs initiated this lawsuit. In April 2019, Plaintiffs filed a First

Amended Wrongful Death Petition for Damages and to Set Aside Fraudulent Conveyances,

asserting wrongful death claims for battery and negligence and a claim of “fraudulent conveyances

and civil conspiracy to commit fraudulent conveyances as part of a scheme to prevent [Pickert]

and Plaintiffs from collecting a judgment lien.” The petition alleges that, shortly after the jury’s

verdict in the Harris case was announced, Jungerman approached Pickert in a threatening manner

in the courtroom and told him: “None of this matters. I have 186 guns. I did it once before. I will

do it again. You can’t touch me.” The petition further alleges that Jungerman shot and killed

Pickert on October 25, 2017, and thereafter admitted that he “killed a lawyer with a gun” and that

he did it “because a lawyer stole his money” and “caused [him] a lot of problems.”

 Relating to the fraudulent transfer claim, the petition contains detailed allegations of

property transfers by Jungerman and Buesing beginning in August 2017—shortly after entry of

the Harris judgment—and continuing after Pickert’s death, which were alleged to be part of “a

scheme to fraudulently transfer assets to hinder, delay, and defraud” present and/or future

creditors, including Plaintiffs. By way of example, the petition alleges that on August 24, 2017,

 3
Jungerman made a $900,000 transfer into the Trust and a $1.5 million deposit into a bank account

in the name of the Farm Corporation, the following day he transferred his home and other property

to Buesing, and approximately two months later, Jungerman withdrew $2,100,000 from the Farm

Corporation account and $900,000 from the Trust account in the form of cashier’s checks made

payable to a title company. The petition alleges that the Trust, the Farm Corporation, and Baby-

Tenda3 are alter egos of Jungerman, and that, as a result, “any assets held by and/or fraudulently

transferred to and/or from [the corporations or Trust] constitute a transfer by Jungerman himself

such that the assets of these alter egos are available to the extent necessary to satisfy any judgment

entered in favor of Plaintiffs herein.” The petition further alleges that Jungerman, Buesing, the

corporations, and the Trust were acting as a joint venture at all relevant times and thus the

corporations, Trust, and Buesing are vicariously liable for Jungerman’s actions. Plaintiffs

requested the trial court void and/or set aside all fraudulent transfers.

 Plaintiffs also requested the trial court appoint a receiver “to take charge and manage

Defendants’ assets,” including bank accounts, the Trust, the Farm Corporation, the assets of Baby-

Tenda, and “any real property owned or managed by any of the Defendants.” Over Jungerman’s

objection, the trial court appointed a receiver “to take charge over all of the Defendants’ property

and assets,” finding that “the facts presented show the existence of conduct on the part of

Defendants which constitutes a great emergency and places this matter in an urgent posture

sufficient to require and justify the appointment of a receiver immediately to take charge of,

manage, preserve, and protect the assets of the Defendants.” Jungerman filed a motion to revoke

the order appointing a receiver, which was overruled by the trial court. The trial court’s denial of

3
 Baby-Tenda is alleged to be “a vintage-style baby furniture business” that, since 2011, operates only online. Plaintiffs
allege that “Jungerman is and has been the owner and sole shareholder of Baby-Tenda since at least 1971.”

 4
Jungerman’s request to revoke the order was affirmed on appeal. See Riegel v. Jungerman, 597

S.W.3d 695, 708-09 (Mo. App. W.D. 2019).

 The trial court entered an order establishing November 15, 2019 as the “Claim Bar

Date”—i.e., the date by which any creditors seeking to participate in the distribution of the

receivership estate must submit their claims to the receiver. See § 515.615.5 (notice of a claim

against the receivership estate shall be filed with the court and shall include, among other items,

the name of the creditor asserting the claim and whether the claim is secured or unsecured).

Plaintiffs filed their “Notice of Claim (Pursuant to RSMo. § 515.615)” on October 17, 2019,

advising that they “are unsecured creditors of the Receivership Estate and have asserted their

claims in the First Amended Wrongful Death Petition for Damages and to Set Aside Fraudulent

Conveyances in this Court.” Thereafter, Jungerman, individually, filed an objection to Plaintiffs’

claim pursuant to section 515.620.1, which provides that “[a]t any time prior to the entry of an

order approving the general receiver’s final report, the receiver or any party in interest may file

with the court an objection to a claim[.]”

 Earlier in 2019, the parties had begun settlement discussions. On October 18, 2019,

Plaintiffs filed a notice of hearing advising that they, Buesing—individually and as trustee of the

Trust—and the Farm Corporation (“settling parties”) would be seeking court approval of a

Confidential Partial Wrongful Death Settlement Agreement on November 21, 2019. The notice of

hearing stated it was being “provided in accordance with R.S.Mo. § 515.610.”4

4
 Section 515.610 of the Missouri Uniform Receivership Act provides that relevant persons “are entitled to not less
than thirty days’ written notice of the hearing of any motion or other proceeding involving any proposed . . .
[c]ompromise or settlement of a controversy that might affect the distribution to creditors from the receivership[.]” §
515.610.6(3).

 5
 On November 13, 2019, Jungerman filed a motion “in his alleged capacity as Trustee or

Co-Trustee” of the Trust to continue the settlement hearing. He asserted that, as trustee or co-

trustee, he was “entitled, and obligated, to participate in settlement negotiations regarding the Trust

and/or Trust assets” and “approve any settlement involving the Trust or Trust assets.” He stated

that he had “not agreed to any settlement, nor ha[d] he seen the Agreement” and requested “time

and an opportunity to conduct discovery prior to any hearing on the proposed Agreement.”

 The settling parties filed an opposition to Jungerman’s motion to continue, arguing that his

objection was untimely pursuant to section 515.6105 and that he lacked standing to object to the

settlement in that he was no longer trustee or co-trustee of the Trust. Regarding the latter argument,

the settling parties referenced (and attached to their opposition) a document executed by

Jungerman and Buesing on April 30, 2018, in which Jungerman purported to appoint Buesing as

successor trustee and resign as trustee, and Buesing accepted the appointment. The document was

notarized by the Barton County Sheriff.6

 The trial court denied Jungerman’s request to continue the November 21, 2019 settlement

hearing; however, it ordered that the hearing “shall be bifurcated” and “[t]he initial portion of the

hearing shall be devoted to the issue of David Jungerman’s standing as trustee or co-trustee of the

5
 Section 515.610.6(5) requires that any objections to a motion to authorize a “settlement of a controversy that might
affect the distribution to creditors from the receivership” be filed at least ten days before the date of the proposed
settlement authorization. The settling parties asserted that Jungerman’s objection to the settlement (which was filed in
his capacity as trustee) was untimely because it was first raised in his motion to continue the hearing, filed on
November 13, 2019, less than ten days before the settlement approval hearing. They further argued that Jungerman’s
Objection to Claim, filed in his individual capacity on November 4, 2019 and pursuant to section 515.620, was not
directed at the settlement, but rather at Plaintiffs’ Notice of Claim filed against the receivership estate pursuant to
section 515.615. Thus, they asserted, Jungerman’s Objection to Claim was not a timely objection to the settlement in
compliance with section 515.610.6(5).
6
 In his motion to continue the settlement hearing, Jungerman questioned the “authenticity and/or validity” of the
document and advised that “[a] notice to depose the Notary Public whose seal is affixed to the Appointment has been
filed and served on all parties this date.” To the extent Jungerman was suggesting the signatures and/or notarization
on the document were not authentic or valid, he appeared to have abandoned such argument, as he did not present any
evidence or further argument on this issue in any subsequent proceeding before the trial court (or this Court on appeal).

 6
[Trust] and his potential legal interest in the proposed settlement.” “The second portion of the

hearing, if necessary, shall be devoted to the settlement itself.”

 The day before the hearing, Jungerman filed a “Legal Brief of Defendant David G.

Jungerman as Alleged Trustee or Co-Trustee of the [Trust] Regarding Proposed Partial

Settlement,” in which he asserted that Plaintiffs were attempting to utilize Trust assets, which they

allege were fraudulently obtained by the Trust, to settle with the Trust, and that if approved by the

trial court, “this partial settlement would prohibit the alleged fraudulently transferred assets from

being restored to individual Defendant Jungerman and/or Defendant Baby-Tenda.” Jungerman

argued “[t]hose assets then would be unavailable to Defendant Jungerman and/or Defendant Baby-

Tenda for use in negotiating potential settlement or satisfaction of any enforceable judgment or

any other lawful purpose.”

 Jungerman also asserted in his brief that he was still trustee because the April 30, 2018

resignation and appointment of Buesing as successor trustee was “ultra vires and void ab initio.”

He claimed that “[i]f the Trust, acting through Jungerman, engaged in a criminal or civil conspiracy

[as alleged by Plaintiffs], then, Jungerman’s resignation and appointment of his daughter as

Successor Trustee in order to further defraud creditors would be an action outside of his authority

as Trustee and, therefore, void from its inception.” He argued, “Stated succinctly: If there was no

conspiracy, the Trust has no liability. If there was a conspiracy, the appointment of Ms. Buesing

as Trustee is invalid and she has no authority to settle with Trust assets.”

 The trial court began the November 21, 2019 hearing by receiving evidence and hearing

argument on the issue of Jungerman’s status as trustee. The evidence admitted included the

Irrevocable Trust Agreement for the Jungerman Family Irrevocable Trust (“Trust Agreement”)

and the testimony of Buesing. The evidence was that the Trust was created in 2003 when Buesing,

 7
the grantor, transferred property (including real property, as the business of the Trust was to engage

in farming operations) into the Trust. Buesing is the sole income beneficiary of the Trust. The

Trust Agreement names Jungerman as trustee and Buesing as successor trustee, and provides that,

upon Buesing’s death, any assets held by the Trust shall be distributed to her children. Buesing has

one daughter, who is the sole contingent beneficiary.

 Buesing testified that in April 2018, she and Jungerman discussed Jungerman resigning as

trustee. Jungerman asked Buesing to create a resignation document that he could execute so

Buesing would become trustee, and he suggested they have it notarized at the Barton County

Sheriff’s Department.7 Buesing “typed up” a document containing an “Appointment of Successor

Trustee and Notice of Resignation of Trustee” and an “Acceptance of Appointment as Trustee.”

The document was executed by Jungerman and Buesing, and notarized by L. Mitchell Shaw, the

Barton County Sheriff, on April 30, 2018.8 In this document, Jungerman purported to appoint

Buesing as successor trustee and resign as trustee, and Buesing “accept[ed] appointment as

Trustee.”

 Buesing testified that she executed a document in her capacity as trustee “regarding the

settlement of [this] litigation,” and had “the full authority and consent of anybody that [she]

need[ed] consent from to execute that document[.]”9 Buesing stated that there was no objection

from her daughter, the sole contingent beneficiary, to the settlement of this case.10

7
 Jungerman was incarcerated at this time, and he was in Barton County on April 30, 2018 for court business on a
different matter. His jail phone calls with Buesing relating to his resignation as trustee were recorded. Transcripts of
the phone calls were admitted at the November 21, 2019 hearing.
8
 Sheriff Shaw testified at the hearing that he notarized these documents after he observed Jungerman and Buesing
execute them at the Sheriff’s office on that date.
9
 Article VI, Paragraph C(7) of the Trust Agreement provides authority for the trustee “to compromise and adjust any
claims . . . which others may assert against the trust estate or the Trustee.”
10
 Buesing testified that her daughter is represented by separate counsel.

 8
 After the parties presented argument and evidence,11 the trial court ruled that it would “not

continue with the settlement” that day, and instead would give the settling parties “an opportunity

to fully brief [the] court on the issues that have been raised to standing[.]”

 Thereafter, the settling parties and Jungerman submitted additional briefing on

Jungerman’s standing to challenge the partial settlement agreement. Among other arguments

raised in their briefing, the settling parties asserted that (1) Jungerman lacks standing to claim his

breach of trust invalidates his resignation as trustee, (2) his resignation was valid and effective, (3)

he retains no authority to settle claims asserted against the trust estate or trustee, and (4) Buesing

is the trustee with full power and authority to enter into a settlement agreement with Plaintiffs on

behalf of the Trust.12

 On May 15, 2020, the trial court entered its Amended Order Overruling Defendant David

Jungerman’s Objection to the Partial Settlement of the Settling Parties. The trial court made the

following “Findings and Conclusions”:

11
 At the hearing, the trial court took judicial notice of Jungerman’s answer to the original petition, which was titled
“Answer of David Jungerman as Former Trustee of [the Trust]” and filed on November 2, 2018.
12
 The settling parties retained Daniel P. Wheeler, former Probate Commissioner of the Circuit Court of Jackson
County, as an expert to review the Trust Agreement, transcript of the November 21, 2019 hearing, and other
documents, and to provide detailed opinions in support of the four above-cited arguments. One such opinion was that
Buesing was automatically named successor trustee by the plain language of the Trust Agreement when Jungerman
resigned, subject only to her acceptance of this role; in other words, she became successor trustee not by Jungerman’s
appointment of her to this role, but by virtue of Jungerman resigning. To support this opinion, Wheeler cited to the
following provisions of the Trust Agreement:

 “In the event DAVID JUNGERMAN should fail or cease to act as Trustee . . . for any reason, the
 following shall become the successor Trustees of such trust, to serve in the order named: the
 Grantor, first successor [i.e., Buesing, as she was the Grantor of the Trust] . . . . Art. V, ¶ A(1)
 (emphasis added).

 “A person serving as Trustee shall be deemed to have failed, declined or ceased to serve as Trustee
 in the event of the . . . resignation . . . of that person.” Art. V, ¶ D (emphasis added).

Thus, Wheeler opined, requirements of the Trust Agreement relating to the appointment of a successor trustee did not
apply to Buesing because she was not successor trustee by virtue of appointment.

 9
 5. The Court finds Defendant David Jungerman’s April 30, 2018 resignation as
 Trustee of the Trust is valid and enforceable.

 6. The Court finds Defendant David Jungerman, both individually and in his
 capacity as the alleged Trustee and/or co-Trustee of the Trust, lacks standing to
 challenge the Settling Parties’ settlement. David Jungerman lacks standing to claim
 that his own breach of trust invalidates his resignation as Trustee of the Trust. By
 operation of the Trust, Defendant Angelia Buesing became successor Trustee once
 Defendant Jungerman resigned and she accepted the role as Trustee.

 7. The Court finds that the Defendant David Jungerman retained no power or
 authority to approve or disapprove the Settling Parties’ settlement agreement.

 8. The Court finds Angelia Buesing is the Trustee of the Trust with full power and
 authority to enter the Settlement Agreement with Plaintiffs on behalf of the Trust.
 The Court further finds that since April 30, 2018, Angelia Buesing acted as sole
 Trustee of the Trust with the full power and authority to take reasonable steps to
 defend claims against the Trust, to settle any such claims, and to seek Court
 approval of any negotiated settlements.

 9. The Court further finds that Defendant David Jungerman, individually, timely
 objected to Plaintiffs’ Notice of Claim against him individually pursuant to R.S.Mo.
 § 515.620. Plaintiffs’ claim against David Jungerman in any capacity will not be
 compromised or resolved by the Settling Parties’ settlement.

 10. The Court finds that Defendant David Jungerman, both individually and in his
 capacity as the alleged Trustee and/or co-Trustee of the Trust, did not timely object
 to the settlement pursuant to R.S.Mo. § 515.610 and have therefore, at a minimum,
 failed to preserve any objections as they pertain to the funding and distribution of
 the Settlement Agreement.

The trial court set a settlement approval hearing to occur on June 4, 2020.

 On May 28, 2020, Jungerman, “in his alleged capacity as Trustee or Co-Trustee” of the

Trust, filed with this Court a Petition for Preliminary and Permanent Writ of Mandamus, or in the

Alternative, Writ of Prohibition, seeking relief from the “May 15, 2020, Order and the Notice of

Hearing for June 4, 2020.” On June 1, 2020, this Court issued its Order denying Jungerman’s

petition for writ.

 Meanwhile, the trial court granted the general receiver leave to resign and appointed a new

general receiver on May 30, 2020. The settlement hearing was continued to allow the new general

 10
receiver “adequate time to familiarize himself with this matter in order to fulfill his obligations,

duties in a prudent matter.”

 The settlement approval hearing occurred on August 20, 2020, at which the trial court

received evidence from the settling parties in support of their settlement agreement. Present were

counsel for the settling parties and Jungerman, in both his individual capacity and as alleged trustee

of the Trust.13 The following day, the trial court entered its Judgment and Order Approving

Confidential Partial Wrongful Death Settlement Pursuant to R.S.Mo. § 537.095 and § 515.610 and

Approving Distributions to Minor Beneficiaries.14 The trial court expressly incorporated into the

Judgment its May 15, 2020 order overruling Jungerman’s objection to the settlement. The trial

court also made an express determination that “[t]his Judgment and Order is final and there is no

just reason for delay under Rule 74.01(b).”

 Jungerman, in his capacity as alleged trustee, filed a notice of appeal. Plaintiffs moved to

dismiss his appeal for lack of jurisdiction, asserting Jungerman was not aggrieved by the trial

court’s judgment and thus lacked standing to bring this appeal. We took the motion with the case,

and the parties submitted briefing on the merits of Jungerman’s points on appeal.

 Jungerman asserts three claims of error in this appeal. In his first and second points, he

argues the trial court erred in finding he “did not have standing to challenge the partial settlement.”

In his first point, he argues that “he has a duty to take reasonable steps to defend claims against

the Trust in that [he] remains a defendant in his capacity as trustee.” In his second point, he argues

that he “remains trustee in that, based upon Plaintiff’s [sic] allegations of fraud, his resignation

and Defendant Buesing’s appointment as trustee would not be valid and enforceable.” In his third

13
 At the hearing, no objection was raised on behalf of Jungerman, in either capacity, to the settlement.
14
 Plaintiff Emily Riegel, Pickert’s wife and the mother of their two minor children, was appointed next friend for the
children.

 11
point, Jungerman asserts the trial court erred in finding he “did not timely object to the settlement

and failed to preserve any objections as pertaining to funding and distribution because no specific

objection was required by law in that § 537.095, R.S.Mo does not set forth any procedure for

objection and the objection procedure outlined in § 515.610, R.S.Mo did not apply to action not

initiated by receiver.”

 Analysis

 We first address the threshold issue of Jungerman’s standing to bring this appeal. See State

ex rel. Koster v. ConocoPhillips Co., 493 S.W.3d 397, 399 (Mo. banc 2016) (“Before reaching the

merits of [the appellant’s] appeal, this Court must first determine whether he is entitled to an

appeal[.]”); In re Lawson, 496 S.W.3d 620, 622 (Mo. App. S.D. 2016) (“As a threshold issue, we

must determine that the [appellants] have standing to bring this appeal. Otherwise, we must

dismiss.” (internal citation omitted)).

 “The right to appeal is purely statutory, and where a statute provides no right to appeal,

none exists.” Wooldridge v. Hull, 604 S.W.3d 364, 367-68 (Mo. App. S.D. 2020). As stated above,

Jungerman appeals in his capacity as alleged trustee. Trusts “are governed by chapter 456, the

Missouri Uniform Trust Code (MUTC), which does not address appellate standing, so any right

of appeal must lie in the general appeals statute, section 512.020.” In re Knichel, 347 S.W.3d 127,

130 (Mo. App. E.D. 2011). “Section 512.020 grants a right of appeal to ‘any party to a suit

aggrieved by any judgment of any trial court in any civil cause.’” Id. “A party is ‘aggrieved’ when

the judgment operates prejudicially and directly on his personal or property rights or interest.” Id.

(quoting Betty G. Weldon Revocable Trust ex rel. Vivion v. Weldon ex rel. Weldon, 231 S.W.3d

158, 168 (Mo. App. W.D. 2007)). “A party who has not been aggrieved by a judgment has no

standing to appeal.” Betty G. Weldon Revocable Trust, 231 S.W.3d at 168.

 12
 The trial court found that Jungerman’s 2018 resignation as trustee was valid, and thus he

was no longer trustee with the authority to settle claims on behalf of the Trust. However, even

assuming Jungerman were still the trustee (which we do not determine, because we do not reach

the merits of his appeal), we would still find that he was not aggrieved by the trial court’s judgment,

as the judgment did not operate prejudicially and directly on any personal or property rights or

interest Jungerman would have held in his capacity as trustee. See In re Knichel, 347 S.W.3d at

130-32; see also Wooldridge, 604 S.W.3d at 371 (dismissing the trustee’s appeal for lack of

standing where the trustee did “not allege or argue nor [was] there anything in the record to indicate

that, in his role as trustee, any of his personal or property rights or interests [were] at stake”).

 In Knichel, the trial court found that a co-trustee breached his fiduciary duty to the

beneficiaries and removed him as co-trustee. 347 S.W.3d at 129. The appeal brought by the co-

trustee was dismissed for lack of standing. Id. at 132. The Eastern District of this Court found that

while a trustee “would have standing under section 512.020 to appeal on behalf of a beneficiary

aggrieved by the lower court’s judgment,” it does not follow that a trustee has “standing to advance

his personal interests unrelated to those of his protectees.”15 Id. at 130. Noting that “none of the

beneficiaries” appealed the trial court’s judgment, the Court found that the co-trustee “was not

representing their interests,” as he was not “seek[ing] a property right in or claim against the trust

on their behalf.” Id. “Rather,” the Court found, “the substance of [the co-trustee’s] challenge . . .

advances his own interests,” namely in his status as trustee and trustee fees, and neither “equate[s]

to a pecuniary interest in [the] trust assets.” Id. at 130-31 (finding the co-trustee’s status as trustee

“was not his personal right but rather a legal duty, of which the [trial court] discharged him” and

15
 “A trustee shall administer the trust solely in the interests of the beneficiaries.” § 456.8-802.1.

 13
his “right to collect fees was not a beneficial interest in the underlying trust but merely

compensation allowed by law”).

 Similar to the co-trustee in Knichel, in challenging the trial court’s judgment in his capacity

as alleged trustee, Jungerman seeks to advance his own personal interests unrelated to those of his

“protectees”—the beneficiaries of the Trust. Jungerman asserts that he “is an aggrieved party under

§ 512.020 R.S.Mo” because the trial court “made specific orders directly impacting [his] position

in this suit[.]” This vague claim echoes the co-trustee’s basis for standing in Knichel—which was

ultimately rejected—that he was aggrieved by the trial court’s judgment because it implicated his

status as trustee.

 Jungerman also asserts that “unlike in Knichel, he is directly accused of conspiring with

other defendants to fraudulently transfer personal assets into [the] Trust, allegedly for Defendant

Jungerman’s benefit. As a result, he has a pecuniary and/or personal interest in the assets of the

Trust.” Jungerman does not explain, nor do we comprehend, how he (as trustee) would have

obtained a pecuniary or personal interest in the assets of the Trust “[a]s a result” of Plaintiffs’

allegations that he fraudulently transferred assets into the Trust.16 Furthermore, any assets that

were fraudulently transferred into the Trust would not be returned to the party that committed the

fraud.17 See Taylor v. Clark, 140 S.W.3d 242, 256 (Mo. App. S.D. 2004) (“[F]raudulent

conveyances are generally valid as against a grantor” and “[i]n such cases, a party who makes a

16
 Jungerman made a similar—although more transparent—argument to the trial court, when he asserted that if
approved by the trial court, “this partial settlement would prohibit the alleged fraudulently transferred assets from
being restored to individual Defendant Jungerman and/or Defendant Baby-Tenda” and “[t]hose assets then would be
unavailable to Defendant Jungerman and/or Defendant Baby-Tenda for use in negotiating potential settlement or
satisfaction of any enforceable judgment or any lawful purpose.”
17
 If the assets were not fraudulently transferred into the Trust, there would still be no basis for Jungerman, in his
capacity as trustee, to assert a beneficial interest in those assets held by the Trust.

 14
conveyance for the purpose of hindering, delaying, or defrauding a creditor, will ordinarily be left

where the court finds him.”).

 There is simply nothing in the record before us demonstrating that Jungerman, even

assuming he remained trustee of the Trust, has a personal or property right that was prejudicially

and directly affected by the trial court’s judgment denying him the opportunity to frustrate the

settlement. Jungerman is not a beneficiary of the Trust. He, as trustee, would have no beneficial

right or interest in the Trust property. Jungerman cannot claim—nor has he attempted to claim—

that he seeks to challenge the trial court’s judgment on behalf of the beneficiaries, as they have

consented to and are in favor of the settlement, and Buesing, the sole income beneficiary, has

actively opposed Jungerman’s challenges to the settlement. Nor has he attempted to claim that his

motivation in challenging the settlement is to enforce a term, condition, or provision of the Trust

Agreement that would be violated by the settlement. Finally, Jungerman, in his claimed capacity

as trustee, has not incurred any damages, fees, or costs by operation of the trial court’s judgment.

Cf. In re T.R. Potter, Jr. Exempt Trust, 593 S.W.3d 556, 562 (Mo. App. E.D. 2019) (trustee had

standing to appeal because—unlike the co-trustee in Knichel—the trustee was subject to a money

judgment for attorney’s fees and expenses).18 In short, even if Jungerman were found to have

retained the position of trustee, he would not be an aggrieved party with standing to appeal.

 Because Jungerman was not aggrieved by the trial court’s judgment, he lacks standing to

bring this appeal and we are required to dismiss it. See In re Knichel, 347 S.W.3d at 132.

18
 The Court also found in T.R. Potter, Jr. Exempt Trust that, while the trustee did not “have a personal interest in the
trust, trustees are permitted as fiduciaries to pursue claims on behalf of beneficiaries who are aggrieved by a judgment
of a lower court,” and the trustee argued that the “contingent remainder beneficiaries of the trust assets [were]
aggrieved by the probate court’s interpretation of the trust.” 593 S.W.3d at 562. Here, as previously explained, the
sole contingent remainder beneficiary under the Trust Agreement (Buesing’s daughter) has consented to the settlement
and Jungerman has not purported to bring this appeal on her behalf. Thus, for this reason, too, we find T.R. Potter, Jr.
Exempt Trust distinguishable.

 15
 Conclusion

 Plaintiffs’ motion to dismiss the appeal is granted.19 This appeal is dismissed.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur.

19
 Plaintiffs also sought dismissal of Jungerman’s appeal on the ground that he “already sought—and was denied—
appellate review of this issue by way of extraordinary writ,” which Plaintiffs assert was the sole avenue by which
Jungerman could challenge the trial court’s ruling. For this proposition, Plaintiffs rely exclusively on Stichler v.
Jesiolowski, 547 S.W.3d 789 (Mo. App. W.D. 2018), however we find Stichler distinguishable. The issue in Stichler
was who was the proper plaintiff in a wrongful death action involving an unborn child. 547 S.W.3d at 791. The trial
court found Stichler (the child’s grandfather) was not the proper plaintiff and dismissed his petition. Id. at 792. Stichler
appealed, but we determined he lacked standing to bring the appeal, finding he “was never appointed as plaintiff ad
litem,” therefore he was “attempting to appeal the judgment of a case to which he was never a proper party.” Id. at
793-95. We held that “[t]o the extent Stichler wished for this Court to review the decision of the trial court not to
appoint him as plaintiff ad litem, his remedy was one of writ.” Id. at 794. Here, Plaintiffs named Jungerman as a
defendant in his capacity as trustee. Although the trial court ultimately determined he resigned as trustee in 2018, we
cannot say that Jungerman, as trustee, was never a named party to this case.

 16